

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-267-CV

---

IN THE INTEREST OF J.P., A CHILD

------------

FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. Introduction

In two issues, Appellant, Office of the Attorney General of Texas (the "AG"), appeals the trial court's judgment discharging Appellee Joseph Poplett from his child support arrearages based on a mistake in a release of lien filed by the AG. We reverse and remand.

### II. Factual and Procedural History

Joseph and Jamie Poplett had one child, two-and-a-half-year-old J.P., at the time of their divorce in 1988. At the conclusion of the divorce proceedings, the trial court signed an agreed decree of divorce containing the following

orders: (1) Jamie is appointed sole managing conservator of J.P.; (2) Joseph is appointed possessory conservator of J.P.; (3) Joseph is to pay $33 per week in child support; (4) Joseph's employer is to withhold from Joseph's disposable earnings the amount owed for J.P.'s support; and (5) all child support payments are to be made through the Tarrant County Child Support Office, where they will then be remitted to Jamie for J.P.'s support.[1]

In May 2007, Joseph filed a "Motion to Confirm Child Support Arrearage, Motion to Clarify Release of Lien and Motion for Offset." He attached to the motion a "Release of Child Support Lien" (the "Release") dated November 23, 2005, that had been signed by Stephen McKenna, a child support officer with the AG. The Release stated, in pertinent part, that:

> In accordance with Texas Family Code § 157.322,[2] this matter has been satisfied pursuant to the child support lien described below. This release constitutes a complete release of any claim the Office of the Attorney General of the State of Texas has under this specific child support lien, including but not limited to account number [].[3]

---

[1] The State later filed a notice redirecting payments to the Texas Child Support Disbursement Unit.

[2] Section 157.322 of the Texas Family Code states, in pertinent part, that "[o]n payment in full of the amount of child support due, together with any costs and reasonable attorney's fees, the child support lien claimant shall execute and deliver to the obligor or the obligor's attorney a release of the child support lien." Tex. Fam. Code Ann. § 157.322(a) (Vernon 2008).

[3] The account number has been omitted for confidentiality purposes.

In response, the AG filed a motion to confirm support arrearages, asserting that, as of August 22, 2007, Joseph owed more than $47,000 in support arrearages and asking the trial court to enter a judgment reflecting the arrearages. The AG attached a copy of the divorce decree and a schedule of Joseph's missed child support payments to its motion.

During a hearing on the parties' motions, the trial court found that "the [Release] is not ambiguous. . . . [I]t purports to release not only a lien but the entire obligation by its wording." After expressing its preliminary opinion, the trial court ordered the parties to submit further written arguments, and it vacated a previously filed administrative writ of withholding.

The AG filed its brief, asserting that the Release was ineffective to discharge Joseph's child support obligation because (1) the Release only applied to the specific bank account described in the Release; (2) there was a lack of consideration; and (3) Jamie alone had the authority to discharge Joseph's obligation. Joseph responded, arguing that the Release was unambiguous and therefore constituted a complete release and that the AG did, in fact, have the authority to enter the Release. After considering the parties' arguments, the trial court signed a judgment discharging Joseph's alleged arrearages. In its judgment, the trial court described the Release as a "contract" and an "agreement," labeled the AG's arguments as "preposterous" and without good

3

faith, and took notice of the AG's "astounding action of issuing an administrative writ of withholding to collect monies that were in dispute and pending."

The AG timely filed a motion for new trial, denying that it had entered into an agreement with Joseph, contending that it had filed the Release only because Joseph's bank account had been closed, and asserting that, even if the Release unambiguously discharged Joseph's arrearages, a mistake of fact precluded the document from having a discharging effect. The AG attached to its motion for new trial an affidavit by McKenna, in which McKenna explained that (1) Joseph had not made any child support payments between September 1997 and December 2005 and therefore there was no consideration for the Release in November 2005; (2) the Release "was done because the account at the bank was closed"; and (3) the Release "incorrectly stated the lien was being released under Texas Family Code Section 157.322, when it should have referred to Texas Family Code Section 157.321."[4] After a hearing on the AG's

---

[4] Section 157.321 of the Texas Family Code states that

> [a] child support lien claimant may at any time release a lien on all or part of the property of the obligor or return seized property, without liability, if assurance of payment is considered adequate by the claimant or if the release or return will facilitate the collection of the arrearages. The release or return may not operate to

4

motion for new trial, the trial court did not rule on it, and the motion was overruled by operation of law.[5]  This appeal followed.[6]

### III.  Legal Sufficiency

In its first issue, the AG challenges the legal sufficiency of the evidence to support the Release.  Specifically, the AG asserts that the evidence is legally insufficient to show that (1) the Release satisfied the elements of a contract and (2) the AG had the authority to discharge Joseph's child support obligation.

---

prevent future action to collect from the same or other property owned by obligor.

Tex. Fam. Code Ann. § 157.321 (Vernon 2008).

[5] During the hearing, McKenna testified as to his employment with the AG, his interaction with financial institutions generally and Joseph's bank specifically, and his signing of the Release based on the closing of Joseph's account.  The trial court concluded that "the [AG had] made a mistake. . .[a]nd . . . that the [AG] will fight until hell freezes over to prove that they're not wrong even when they know that they are. . . .  [I]f the [AG] wants to continue this course of bad faith, I will allow the [AG] to do so, and I will react appropriately."

[6] Before the AG filed its notice of appeal, the trial court filed findings of fact and conclusions of law.  The trial court found, among other things, that (1) Jamie had requested the AG's services to collect child support from Joseph and that she had assigned the right to receive child support to the AG; (2) Jamie's request for the AG's services authorized the AG to file the Release, and (3) the Release was unambiguous.  The trial court concluded that Jamie "entered into a full and final release of [Joseph's] child support obligation through her authorized agent, the Attorney General of the State of Texas."

5

## A. Standard of Review

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a

6

scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002). Any ultimate fact may be proved by circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). A fact is established by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts proved in the case. *Id.* However, to withstand a legal sufficiency challenge, circumstantial evidence still must consist of more than a scintilla. *Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex. 1995).

## B. Validity of the Release

The AG argues that, because Joseph asserted the affirmative defense of release, it was Joseph's burden to show that the Release was valid by proving up the elements of a contract.[7]

---

[7] The AG first raised this issue in its motion for new trial. However, because this is an appeal from a bench trial, a complaint regarding legal insufficiency may be raised for the first time on appeal. *See* Tex. R. App. P. 33.1(d); Tex. R. Civ. P. 324(a)–(b).

### 1. Applicable Law

A release is a contract subject to the rules of contract construction. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). Accordingly, in order to establish the affirmative defense of release, the party asserting the defense of release is required to prove the elements of a contract. *Vera v. N. Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex. App.—San Antonio 1998, no pet.). A release that is valid on its face, however, constitutes prima facie proof of payment; the burden of proving otherwise is on the party who denies its validity. *Martin v. Farmers' Nat'l Bank of Hillsboro*, 294 S.W. 240, 241 (Tex. Civ. App.—Waco 1927, no writ); *see also Deer Creek Ltd. v. N. Am. Mortgage Co.*, 792 S.W.2d 198, 201 (Tex. App.—Dallas 1990, no writ) ("Once the release was properly pleaded, the burden then shifted to appellants to produce evidence that raised a fact issue as to a legal justification for setting aside the release.").

### 2. Analysis

Here, McKenna, an agent of the AG, signed and acknowledged the Release, and the AG itself asserted in its motion for new trial that it does not dispute the trial court's finding that the Release states that the child support obligation was paid in full. Further, the Release provides that under section 157.322 of the family code the lien has been satisfied. Section 157.322 states

8

that a release will be executed when the underlying child support obligation has been paid in full. *See* Tex. Fam. Code Ann. §157.322(a). The Release, therefore, on its face, purports to discharge Joseph of the full amount of his arrearages and is a prima facie rebuttal to the AG's claim that Joseph owed more than $47,000 in arrearages. *See Deer Creek Ltd.*, 792 S.W.2d at 201; *Martin*, 294 S.W. at 241. Thus, because the Release is valid on its face, the burden shifted to the AG to produce evidence that would result in the Release being set aside. *See, e.g., Williams*, 789 S.W.2d at 264 (recognizing that a release is subject to avoidance on grounds such as fraud or mistake); *see also Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 570–71 (Tex. App.—San Antonio 2004, no pet.) (recognizing lack of consideration as an affirmative defense to a release that is valid on its face).[8] Because the Release is valid on its face, and because the burden was on the AG to produce evidence challenging the validity of the Release, we overrule this portion of the AG's first issue.

---

[8] Although the AG asserted lack of consideration in its original pleadings, it did not raise this on appeal. The AG does raise on appeal the defense of mistake as grounds for setting aside the Release; however, for the reasons explained below, the defense of mistake is not properly before the court.

## C. Lack of Authority

The AG also argues that Jamie alone had the authority to release Joseph's full child support obligation and that there is insufficient evidence to show that Jamie assigned her rights to the AG. In support of its argument, the AG directs our attention to section 231.002(i) of the family code, which states that the AG only has the authority to release all or a portion of arrearages if they are (1) confirmed in a judgment and (2) assigned to the AG under section 231.104(a) of the family code. The AG contends that, because the arrearages at issue in this appeal were neither confirmed in a judgment nor assigned to the AG, the AG lacked the authority to release the entire obligation.

The trial court, on the other hand, found that Jamie had "requested services of the [AG] in collecting child support . . . . This request included an assignment of her right to receive and give receipt for child support . . . [and] . . . expressly or impliedly authorized the [AG] to enter into the Release . . . ."

### 1. Applicable Law

An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority). *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). Apparent authority is based on estoppel arising

either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.

*Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998).

The rule that an agent can bind his principal by acts within his apparent authority, however, does not apply to public officers. *Thermo Prod. Co. v. Chilton ISD*, 647 S.W.2d 726, 733 (Tex. App.—Waco 1983, writ ref'd n.r.e.); *see also Fort Worth Cavalry Club v. Sheppard*, 125 Tex. 339, 83 S.W.2d 660, 663 (1935). All public offices and officers are creatures of law. *Fort Worth Cavalry Club*, 83 S.W.2d at 663. The powers and duties of public officers are defined and limited by law. *Id*. Therefore, the act of a public officer must be expressly authorized by law or implied from the law. *Id.* Public officers may make only such contracts for the government they represent as they are authorized by law to make. *Id.*

Title IV-D of the Social Security Act requires states to "provide services relating to the establishment of paternity or the establishment, modification, or enforcement of child support obligations . . . ." 42 U.S.C.A. § 654(4) (West Supp. 2009). The family code designates the AG as Texas's Title IV-D agency and sets forth its rights and responsibilities to collect child support. Tex. Fam. Code Ann. §§ 231.001, .0011, .101 (Vernon 2008). The AG may, among

11

other things, enter into agreements or contracts with federal, state, or other public or private agencies or individuals for the purpose of carrying out the agency's responsibilities under federal or state law. *Id.* § 231.002(c) (Vernon 2008). The AG may provide a release or satisfaction of a judgment for all or part of the amount of the arrearages assigned to it under section 231.104(a) of the family code. *Id*. § 231.002(i). Section 231.104(a) states that

> [t]o the extent authorized by federal law, the approval of an application for or receipt of financial assistance as provided by Chapter 31, Human Resources Code, constitutes an assignment to the Title IV-D agency of any rights to support from any other person that the applicant or recipient may have personally or for a child for whom the applicant or recipient is claiming assistance.

*Id.* § 231.104(a) (Vernon 2008). Chapter 31 of the human resources code authorizes the legislature to provide assistance grants to certain needy persons, including needy dependent children and their caretakers, subject to specified limitations. Tex. Hum. Res. Code Ann. §§ 31.001−.044 (Vernon 2001 & Supp. 2008).

### 2. Analysis

Here, there is no evidence that the arrearages were assigned to the AG under section 231.104(a) of the family code. In other words, there is no evidence that Jamie herself, or on behalf of J.P., received any public financial assistance. Therefore, because there is no evidence that Jamie assigned her

12

child support rights to the AG in return for public financial assistance, and because the AG only has the authority to release an entire obligation for child support if the support has been assigned to the AG as a result of the custodial parent receiving public financial assistance, the law did not authorize the AG to release Joseph's entire obligation for arrearages.[9]  Thus, because the law did not authorize the AG to release Joseph's entire child support obligation, the AG was not acting as an agent for Jamie when it entered the Release.  *See Fort Worth Cavalry Club*, 83 S.W.2d at 663.  We hold, therefore, that the Release is invalid as to the arrearages owed to Jamie.  We sustain this portion of the AG's first issue.

---

[9] Support rights can also be assigned under section 231.104(b), which states that "[a]n application for child support services is an assignment of support rights to enable the Title IV-D agency to establish and enforce child support and medical support obligations, but an assignment is not a condition of eligibility for services."  Tex. Fam. Code Ann. § 231.104(b).  However, the family code does not provide the AG with the authority to release the entire obligation of arrearages assigned to it under this section.  On the contrary, federal law requires the State to distribute collected support, less certain fees, to custodial parents who never receive public assistance.  42 U.S.C.A. § 657(a)(3) (West Supp. 2009).  Therefore, even if Jamie had assigned her rights under section 231.104(b) of the family code, the AG did not have any ownership in the support rights and therefore did not have the authority to release Joseph's entire obligation for arrearages.

13

## IV. Mistake

In its second issue, the AG claims that the language in the Release that can be read as a release of the entire child support obligation is not binding because it was included in the Release by mistake. The AG, however, first raised the issue of mistake in its motion for new trial. Mistake is an affirmative defense that is waived if not pleaded. *See Kendziorski v. Saunders*, 191 S.W.3d 395, 406–07 (Tex. App.—Austin 2006, no pet.) (unilateral mistake is an affirmative defense); *Marsh v. Marsh*, 949 S.W.2d 734, 745 (Tex. App.—Houston [14th Dist.] 1997, no writ) (mutual mistake is an affirmative defense); *see also* Tex. R. Civ. P. 94 (stating that affirmative defenses must be affirmatively pleaded or they are waived). Therefore, because the AG did not plead mistake as an affirmative defense, and because the issue was not tried by consent, the AG has waived its mistake defense on appeal. *See Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.) (concluding that an affirmative defense raised for the first time in a motion for new trial is untimely). Accordingly, we overrule the AG's second issue.

## V. Conclusion

Because we have concluded that the Release is invalid, we reverse the trial court's judgment confirming arrears at $0 and denying the AG's motion to

14

confirm support arrearage, and we remand the case to the trial court for further

consideration of the AG's motion to confirm child support arrearage.


                                        ANNE GARDNER
                                          JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

DELIVERED:  August 31, 2009