# NO. 12-09-00258-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***STEPHEN HUTCHINS,*** *APPELLANT* | § | ***APPEAL FROM THE*** |
| ***V.*** | § | ***COUNTY COURT AT LAW #2*** |
| ***THE STATE OF TEXAS,*** *APELLEE* | § | ***SMITH COUNTY, TEXAS*** |

## *MEMORANDUM OPINION*

Stephen Wayne Hutchins appeals from a trial court order revoking a suspended commitment order that was entered after the court found him in contempt for nonpayment of child support. In four issues, Hutchins argues that the trial court failed to properly advise him of his right to counsel and that the evidence was insufficient to support the trial court's contempt finding. We affirm in part and dismiss in part.

## BACKGROUND

Since the filing of the divorce petition in this case in 1990, Linda Hutchins[1] has struggled to obtain child support payments from Stephen Hutchins for their three children. Before the divorce decree was signed, the trial court held Stephen in contempt for not paying court ordered child support, and Linda has brought numerous enforcement actions in the ensuing years. The State became involved in the case in 1991, at which time it alleged that Stephen owed twenty–four hundred dollars in unpaid, court ordered support.

---

[1] It appears that Linda's surname became "Moulton" at some point during this litigation. For ease of reference, we will refer to the parties by their first names and to the Office of the Attorney General as the State.

1

In September 2006, the trial court found that Stephen owed nearly $21,000 to his children and found him in contempt of court. The court ordered that he be committed to the county jail, but suspended that commitment and placed him on community supervision. The court revoked that commitment in March 2007, but again released Stephen to community supervision in April 2007. On April 23, 2009, the State filed a motion to revoke Stephen's suspended commitment, asserting that he had violated the terms of his community supervision. On July 7, 2009, the court held a hearing on the State's motion. At the hearing, Stephen did not dispute that he had not been paying as ordered. Instead, he sought to rely on a settlement agreement he claimed Linda had signed. The trial court found that he had violated the terms of his community supervision and revoked his previously suspended commitment. This appeal followed.

### JURISDICTION

Stephen argues in four issues that the trial court failed to inform him of his right to counsel, the trial court failed to obtain a waiver of his right to counsel, that the evidence was legally and factually insufficient to show that he knowingly and voluntarily waived his right to counsel, and that the trial court erred in finding him in contempt. The State argues that this court lacks jurisdiction to consider these arguments because Stephen's exclusive remedy is to file a writ of habeas corpus or writ of mandamus.

## Applicable Law

Generally, a contempt order is reviewable only by a petition for writ of habeas corpus (if the person in contempt is confined) or a petition for writ of mandamus (if no confinement is involved). *See In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005); *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex. App.–Fort Worth 2001, pet. denied) (citing *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding)). Accordingly, this court lacks jurisdiction to review contempt orders by direct appeal. *See Tex. Animal Health Comm'n v. Nunley*, 647 S.W.2d 951, 952 (Tex. 1983); *Ex parte Cardwell*, 416 S.W.2d 382, 384 (Tex. 1967) (orig. proceeding); *see also Long*, 984 S.W.2d at 625 ("Contempt orders that do not involve confinement cannot be reviewed by writ of habeas corpus, and the only possible relief is a writ of mandamus.")

However, courts have considered other issues decided by a trial court contemporaneously with the contempt proceeding so long as the issue is not a collateral attack on the contempt judgment. *See Herzfeld v. Herzfeld*, 285 S.W.3d 122, 133 (Tex. App.–Dallas 2009, no pet.) (discovery sanction); *In the Interest of B.C.C.*, 187 S.W.3d 721, 723–24 (Tex. App.–Tyler 2006, no

2

pet.) (violation of terms of community supervision); *In the Interest of T.L.K*., 90 S.W.3d 833, 841 (Tex. App.–San Antonio 2002, no pet.) (attorney's fees); *In the Interest of M.E.G.*, 48 S.W.3d 204, 208–09 (Tex. App.–Corpus Christi 2000, no pet.) (distribution of judgment, notice, and standing).

Here, this court lacks jurisdiction to review the contempt finding on direct appeal. We do have jurisdiction to consider other issues arising from the 2009 hearing. *Cf. Nunley*, 647 S.W.2d at 952–53 (Tex. 1983) (considering issues other than contempt order); *Krone v. Krone*, No. 08-03-00144-CV, 2004 Tex. App. LEXIS 5139, at *4 (Tex. App.–El Paso June 10, 2004, pet. denied) (mem. op.) (dismissing for lack of jurisdiction where appellant sought to appeal only the contempt order).

<u>**WAIVER OF RIGHT TO COUNSEL**</u>

In his first, third, and fourth issues, Stephen argues that the trial court failed to comply with Texas law regarding the appointment of counsel.

## Applicable Law

Texas law requires that a trial court, when hearing an enforcement action to revoke community supervision, must determine whether incarceration of the respondent is a possible result of the proceedings. *See* TEX. FAM. CODE ANN. § 157.163(a) (Vernon 2008). If incarceration is a possibility, the court must inform a respondent who does not have counsel of the right to be represented by an attorney and must inform an indigent respondent that he has the right to court appointed counsel. *See id.* § 156.163(b). A trial court is "without authority" to assess a jail term to an unrepresented, indigent person unless it has complied with the statutory requirements for waiver of counsel. *See **Ex parte Gunther***, 758 S.W.2d 226, 226–27 (Tex. 1988) (orig. proceeding).

Courts use the rules of criminal procedure to evaluate problems presented in child support collection cases because those proceedings are quasi–criminal. *See*, *e.g.*, *In the Interest of B.C.C.*, 187 S.W.3d at 723 n.2 (citing *Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex. 1986)); *see also **Ex parte Scott***, 133 Tex. 1, 10, 123 S.W.2d 306, 311 (1939) ("Further, we acknowledge that proceedings in contempt cases should conform as nearly as practicable to those in criminal cases."). A defendant in a criminal case may waive the right to counsel, but to be effective, a waiver of counsel must be made competently, knowingly, intelligently, and voluntarily. *See **Collier v. State***, 959 S.W.2d 621, 625-26 (Tex. Crim. App. 1997) (citing *Godinez v. Moran*, 509 U.S. 389, 400–01, 113 S. Ct. 2680, 2687, 125 L. Ed. 2d 321 (1993)). This means the defendant must have a full

understanding of the right to counsel and a meaningful awareness of the dangers and disadvantages of self–representation. *Collier*, 959 S.W.2d at 626.

**Facts**

The trial court never directly advised Stephen that he had a right to appointed counsel or of the ramifications of proceeding without counsel. Stephen had previously hired counsel and said that he had attempted to hire the same attorney for the hearing in this case. The trial court judge knew that the attorney had been suffering from an illness. The court recessed the proceedings and reconvened them after it determined that counsel would not appear to represent Stephen.

The trial court told Stephen that he had "the same rights to have a court–appointed attorney as these gentlemen." The reference was apparently to other men in the courtroom. The court presented Stephen with a document. That document was a request to speak with the "Smith County District Attorney or their [sic] representative" and includes an acknowledgement that the signor understood that he could ask the trial court to appoint counsel if he was indigent.[2] Stephen signed the document. He discussed his case with the deputy attorney general present in court, but the parties could not reach an agreement. The trial court asked the deputy attorney general if she would seek to have Stephen jailed, and she indicated that she would. The trial court reiterated that it had explained Stephen's rights to him and that Stephen was without counsel. The court also noted that Stephen had signed the written admonishment and asked if he had any requests to make of the court. Stephen indicated that he did not, and the trial court proceeded with the hearing.

**Analysis**

The trial court recited in its order that it found Stephen had been advised of his right to court appointed counsel, that he knowingly and intelligently waived his rights, and that he elected to proceed without an attorney. This conclusion might be difficult to reconcile with the way in which Stephen was apprised of his rights. However, to assess whether a waiver is effective, we must review the totality of the circumstances. *See* **Williams v. State**, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008).

There are two important pieces of information present in this case that are not present in many other cases. First, Stephen previously had counsel. He told the court that he had sought to have retained counsel appear in this case. When counsel did not appear, Stephen elected to proceed

---

[2] The written admonishment that the trial court described is different from the one Stephen signed. The trial court told him that the form instructed him that he did not have to talk to the State, that he could stop talking to the State, and that he did not have to reach an agreement. The form Stephen signed does not contain those admonishments.

4

without him. Second, and more importantly, the history of the case provides additional context for the trial court's remarks. Stephen had signed a much more extensive waiver of rights in 2004, which included many more particulars about the process and in which Stephen stated that he understood he could have appointed counsel and that he could request a continuance to retain an attorney. Furthermore, in 2006, the trial court appointed counsel for Stephen.

Stephen argues that the trial court did not first determine whether he was indigent, and did not specifically obtain a waiver of counsel. He argues further that the vague question as to whether he had a "request" was insufficient to constitute a waiver of the right to counsel. We agree that, standing alone, each component of the trial court's procedure was lacking. The written document signed by Stephen is not adequate to indicate an understanding of the rights involved. The meaning of the trial court's statement that Stephen had the same right to counsel as the other men in the courtroom depends entirely on who those men were and what Stephen understood about their right to counsel. And the final question, whether Stephen had a request, taken alone, is similarly vague.

However, when viewed in the context of this case, the facts support the trial court's conclusion that Stephen made a competent, knowing, intelligent, and voluntary decision to proceed without counsel. At the time he elected to proceed without counsel, he knew a great deal about the process at hand, having been involved in it for nearly two decades. He knew counsel could be appointed because counsel had previously been appointed in this case. And he knew he could have retained counsel, because he had previously retained counsel for this case. Stephen had also proceeded in the past without appointed or retained counsel. The trial court could have concluded that Stephen understood his right to counsel and the consequences of waiving his right based on the admonishments given along with the experience Stephen had with counsel, both appointed and retained, throughout the course of this litigation. Therefore, we overrule Stephen's first, third, and fourth issues.

### ACCORD AND SATISFACTION

In his second issue, Stephen argues that there was an agreement between him and the mother of his children that was an accord and satisfaction of his child support arrearage and his ongoing obligation to pay child support. Therefore, he concludes, the trial court had "no basis for finding [him] in contempt for failure to pay child support." This assertion is based on an agreement filed in

5

the clerk's record of this case in February 2007 in which Linda and Stephen agreed that she would accept ten dollars in exchange for "any past due arrears and future child support."[3]

Stephen's argument is an attack on the trial court's 2006 contempt finding. The trial court did not find Stephen in contempt following the hearing in 2009 that resulted in the order appealed in this case. It merely found that he violated the terms of his community supervision.[4] As we established earlier in this opinion, the proper vehicle to attack a contempt judgment is either by writ of habeas corpus or by mandamus. *See Nunley,* 647 S.W.2d at 952; *see also Ex parte Eureste,* 725 S.W.2d 214, 216 (Tex. Crim. App. 1986) ("There is no remedy or right of appeal from an order of contempt."). Accordingly, this court lacks jurisdiction to consider Stephen's argument that he should not have been found in contempt.

## CONCLUSION

We hold that the trial court did not violate Stephen's right to counsel. Therefore, we *overrule* Stephen's first, third, and fourth issues. We lack jurisdiction on direct appeal to consider whether the evidence supports the trial court's contempt finding, and so we *dismiss* Stephen's second issue. We *affirm* the judgment of the trial court.

---

[3] At the hearing, Stephen seems to refer to a new agreement signed by the parties, but he did not offer any new agreement.

[4] It appears that the trial court integrated the 2007 agreement into its order when it redetermined Stephen's child support obligation following a hearing in 2007. This is not an appeal from that hearing. Stephen does not argue that he met the terms of his community supervision. He also does not appeal the trial court's current finding that he owes child support. Whether Linda's disclaimer of past and future child support is effective depends on the scope of her settlement authority and the trial court's consent. *See* TEX. FAM. CODE ANN. § 154.124 (Vernon 2008). Stephen offers no evidence that Linda had the authority to waive his court ordered child support obligations. From Stephen's comments to the trial court, it appears that Linda disclaimed her right to past or future child support, but that the State did not agree to relinquish whatever claim it had to the unpaid monies.

The State does not concede that Linda had any settlement authority. Instead, it argues that Linda assigned her rights to the State in 1991. In its brief, the State cites a pleading it filed in 1991 as proof of this assertion. The cited passage does not show that Linda assigned her rights to the State, not every child support case handled by the State involves an assignment, *see In the Interest of J.P.*, 296 S.W.3d 830, 836–37 (Tex. App.–Fort Worth 2009, no pet.), and a pleading is not proof of the facts asserted therein.

Accord and satisfaction is an affirmative defense. *See*, *e.g.*, *Williams v. Colthurst*, 253 S.W.3d 353, 359 (Tex. App.–Eastland 2008, no pet.). If we construe Stephen's two paragraph argument to be that the trial court erred in finding that he violated the terms of his community supervision because he had met his obligations, his failure to prove accord and satisfaction, which is an affirmative defense, would mean that we would not disturb the trial court's finding on this basis.

**SAM GRIFFITH**
Justice


Opinion delivered August 18, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)