

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00268-CV

TOWN CENTER MALL, L.P.                                          APPELLANT

V.

NEVADA C. DYER, D/B/A ANKAS                                     APPELLEE
ENTERPRISES

----------

## FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 236-241807-09

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In eight issues, Appellant Town Center Mall, L.P. (TCM) appeals from a final judgment awarding damages and attorney's fees to Appellee Nevada C. Dyer, d/b/a Ankas Enterprises. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

In 2004, TCM purchased "La Gran Plaza," a retail mall located in Fort Worth. The following year, after entering into an "Economic Development Program Agreement" with the City of Fort Worth, TCM began a large-scale renovation of the property. It hired project managers and entered into written agreements with contractors to perform the renovation.[2]

One of the project managers that TCM hired was Tony Ozuna. Ozuna was responsible for overseeing the completion of part of the renovation, and he approached a number of people about submitting bids, including wife, Latecha, and his sister, Dyer. Dyer and Latecha had worked together in the past and were interested in participating in the renovation. They therefore filed an assumed name certificate and placed a bid under the name of Ankas Enterprises to perform certain work.[3] TCM accepted the bid and contracted with Ankas in August 2005 to perform the agreed-upon services. Over the next seven months, TCM and Ankas entered into six additional written construction contracts for the performance of various services as part of the renovation of the mall. Ankas also signed fourteen "Release and Waiver of Lien and Indemnity Agreement[s]" when TCM paid Ankas for work performed.

---

[2]Boxer Property Management Corporation managed the property.

[3]Dyer and Latecha both filed an assumed name certificate—Dyer identified the business as "Ankass Ent" and Latecha identified the business as "Ankas Ent." At the time, neither realized that the other was going to file the document. Dyer applied for a tax-identification number and used her Social Security number.

2

According to Ozuna, the renovation was a "very fast-tracked project" and proceeded "very quickly." Although Ankas and TCM executed seven written contracts that detailed the scope of the work to be performed and the compensation to be paid, Ankas and other contractors were "often" asked to perform additional services that were not covered by any written contract.[4] The written contracts contained a provision requiring that change orders be used to document "[a]ny alterations, changes[,] or revisions to the [w]ork, or any increases to the [c]ontract [p]rice," but TCM never issued a single change order for any extra-contractual work that Ankas performed. Dyer nonetheless documented those "miscellaneous tasks" and requested that Ankas be paid for them. TCM ultimately paid Ankas a total of $501,491.07 for the work that it performed on the renovation project. Of that amount, approximately $194,000 accounted for work that was not covered by any of the seven written contracts that Ankas and TCM had executed.

Dyer, d/b/a/ Ankas Enterprises, later sued TCM for breach of contract, sworn account, and quantum meruit, alleging that TCM owed Ankas an additional $116,000 for work performed on the project. TCM denied Dyer's allegations,

---

[4]For example, one written contract between Ankas and TCM required Ankas to construct wired "cages"—spaces measuring about 10 feet x 10 feet that vendors occupied to sell their wares. At times, Ashwin Thakker, TCM's employee responsible for "contract administration," or Shelly Campbell, the leasing manager, directed Ankas employees to modify a cage when the tenant so requested. Ozuna also asked Ankas to perform extra-contractual work.

3

asserted verified pleas, and alleged counterclaims for fraudulent lien and fraud.[5]

Following a bench trial, the trial court signed a final judgment awarding Dyer $139,787.61; pre- and post-judgment interest; and attorney's fees.[6] The trial court denied TCM's fraud claims and also entered findings of fact and conclusions of law, finding in part the following:

> 5. There were seven (7) written contracts entered into between Plaintiff and Defendant. In addition to the work as outlined in those seven contracts, Defendant had Plaintiff perform numerous other items of work outside the scope of the original contracts which should have been reflected as work change orders, but was not. Plaintiff was not fully paid on contracts 2, 4 & 5.
>
> . . . .
>
> 10. Plaintiff's evidence, which established that Plaintiff was entitled to a recovery, was not contested by any credible evidence offered by Defendant. Defendant relied upon Lien Releases in an attempt to vary the terms of written contracts, prohibited under provisions 1.2 and 14.8 of those very same contracts, unless signed by both the Owner and Contractor. The evidence established that the first Lien Release was for a material draw and the last Lien Release was for a partial payment (of an undisclosed contract or change order item), indicative of both parties['] understanding that further monies are due. Plaintiff acknowledged signing those in order to obtain payment, but she did not intend to release Defendant

---

[5]Regarding the fraudulent lien claim, in June 2006, Dyer filed a mechanic's and materialmen's lien affidavit against the mall, claiming that TCM owed Ankas approximately $105,000 for work performed, materials, or both. Dyer released the lien during the pendency of this litigation. TCM's fraud-by-nondisclosure claim centered around Ozuna's relationship with Dyer and Latecha.

[6]The trial court awarded Dyer "attorney fees of $70,000[] through the date of [the] judgment"; "attorney fees of $20,000.00 if appealed to the court of appeals"; and "attorney fees of $10,000.00 if appealed to the Texas Supreme Court."

4

for work performed by Plaintiff but not yet paid for by Defendant as evidenced by repeated invoicing. . . .

11.     The evidence at trial established that the Defendant owed Plaintiff the sum of $116,561.47, as set forth in Plaintiff's Second Amended Petition.

12.     Defendant's Vice-President, Michael Pariza, testified that Plaintiff should not have been back charged $23,226.14, rather that amount should have been charged off to the project by the Defendant.

The trial court concluded in part as follows:

1.     From August 2005 through March 2006, Plaintiff and Defendant entered into seven (7) contracts.  Plaintiff performed its obligations under these contracts.  Defendant failed to pay the full amounts due for contacts 2, 4, [a]nd 5. . . .  Defendant requested change order work to existing contracts which Plaintiff performed but was not fully compensated by Defendant.

2.     Plaintiff furnished services to Defendant and charged the usual, customary, and reasonable price for those services.  Plaintiff has provided Defendant a systematic record of these transactions.  All lawful offsets, payments, and credits have been applied to Defendant's account.  The account was not paid in full and the damages in the amount of $116,561.47 are liquidated and proved by the Affidavit of Nevada Dyer attached to Plaintiff's 2nd Amended Petition.

3.     The trial testimony of Defendant's Vice President, Michael Pariza, established that Defendant erred in taking credits totaling $23,226.14 from monies owed Plaintiff for services rendered . . . .

4.     In addition to breach of contract and sworn account, Plaintiff also pled for quantum meruit, an equitable remedy to compensate the Plaintiff when goods or services are provided at Defendant's request absent an express agreement. . . .  Plaintiff established the following elements of quantum meruit:

A.     Plaintiff provided services or materials;
B.     The services or materials were provided for Defendant;

5

C. Defendant accepted the services or materials; and,

D. Defendant had reasonable notice that Plaintiff expected compensation for the services or materials

TCM appeals.

## III. STANDING

In its first issue, TCM argues that the trial court lacked subject-matter jurisdiction over Dyer's claims because she did not have standing to assert claims involving alleged breaches of contractual or quasi-contractual obligations owed only to Ankas. Dyer responds that TCM confuses standing with capacity and waived any challenge to Dyer's capacity to sue by not raising the issue in a verified pleading.

"A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). A challenge to who owns a claim raises the issue of capacity, not standing. *Prostok v. Browning*, 112 S.W.3d 876, 921 (Tex. App.—Dallas 2003), *rev'd in part on other grounds*, 165 S.W.3d 336 (Tex. 2005); *see Heartland Holdings, Inc. v. U.S. Trust Co. of Tex. N.A.*, 316 S.W.3d 1, 7 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("When it is established that a breach of contract plaintiff lacks entitlement to sue on a contract, the proper disposition may be summary judgment on the merits, but it is not dismissal for want of jurisdiction.").

6

According to TCM, "Dyer was not the proper party to bring any claims concerning the business dealings between Ankas and [TCM]." This complaint relates to capacity rather than to standing. *See Dakil v. Lege*, 408 S.W.3d 9, 11 (Tex. App.—El Paso 2012, no pet.) ("Dakil claims that Lege was not a proper party to file a breach of contract action because he brought the original suit based on invoices from 2-L Contractors Inc. but he had not filed an assumed-name certificate. These complaints relate to capacity rather than standing."). Capacity must be challenged by a verified pleading or it is waived. *Nootsie*, 925 S.W.2d at 662; *see* Tex. R. Civ. P. 93. TCM filed a verified pleading asserting that Latecha was a necessary party to the lawsuit, but it did not raise Dyer's capacity to sue under an assumed name certificate that someone else (Latecha) had filed. *See* Tex. R. Civ. P. 93(14). TCM therefore waived this complaint. We overrule its first issue.

## IV. BREACH OF CONTRACT AND QUANTUM MERUIT

In its second and fourth issues, TCM argues that the evidence is legally insufficient to support the trial court's judgment insofar as it is premised upon Dyer's claims for breach of contract and quantum meruit.

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital

7

fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). Any ultimate fact may be proved by circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). A fact is established by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts proved in the case. *Id.*

The elements of a breach-of-contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.). By contrast, quantum meruit is an equitable theory of recovery based on an implied agreement to pay for benefits received. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The elements of a quantum-meruit claim are (1) valuable services or materials provided by plaintiff to the defendant, (2) who accepted the services or materials, (3) under such circumstances as would reasonably notify defendant that the plaintiff expected to

8

be paid. *BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 572 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

TCM initially contends in its second issue that Dyer could not have prevailed on her contract claim "because she was not a party to any contract sued upon." Similarly, TCM argues in its fourth issue that Dyer could not have prevailed under a quantum meruit theory because "any services or materials allegedly provided outside the scope of the contracts [were] performed by Ankas Enterprises." Both arguments are variations of the same issue that we already considered regarding capacity. We therefore overrule this part of TCM's second and fourth issues.

TCM challenges elements (2) and (3) of Dyer's contract claim, arguing that there is no evidence that Ankas performed and no evidence that TCM failed to comply with its pertinent contractual obligations. In advancing this argument, TCM contends that the trial court never admitted Dyer's exhibits into evidence and that we are therefore limited to considering only the testimonial evidence admitted during trial.[7] We need not decide whether Dyer's exhibits were

---

[7]At the conclusion of the bench trial, Dyer offered two trial notebooks into evidence—an "unedited" version and an "edited" version. TCM re-urged the written objections that it had previously lodged against Dyer's evidence, and the trial court stated that it would "take the admission of [Dyer's] two notebooks under advisement." Thereafter, in this order, the trial court signed a final judgment in favor of Dyer, TCM filed a "Motion for Entry of Order on Defendant's Objections to the Admission of Plaintiff's Trial Exhibits," and the trial court signed an order denying each and every one of TCM's objections. TCM and Dyer disagree about whether the trial court's post-judgment order denying TCM's objections impliedly admitted Dyer's exhibits.

admitted because even without considering them, legally sufficient evidence supports the trial court's judgment.

Dyer testified that TCM failed to pay Ankas in full for (1) the contractual work and (2) the extra-contractual, "miscellaneous tasks" that Ankas had performed on the renovation, and Ozuna testified that Ankas had performed work on the renovation and was owed money. Dyer explained that TCM had paid Ankas a total of $501,491.07 but that Ankas had performed work totaling $641,278.68, leaving a balance due and owing of $139,787.61, the same amount that the trial court awarded Dyer. Regarding the unpaid amounts for work covered by a written contract—which support an award for breach of contract— Dyer testified that TCM owed Ankas $7,013.75 for Contract "2"; $40,500 for Contract "4"; and $10,800 for Contract "5." Regarding the extra-contractual, "miscellaneous tasks" that Ankas performed—which support an award under a quantum-meruit theory—Dyer identified a number of the tasks and testified that TCM owed Ankas $32,771. Dyer failed to disclose an amount owed for several of the tasks (rain-damage repair and modifications to cages), but TCM's own documentary evidence reflected that TCM owed Ankas $6,450 for those tasks. TCM's evidence also showed that it owed Ankas at least $2,100 for two additional "miscellaneous tasks" that Ankas had performed (converting cages and repairing walls). Finally, the trial court's award included an amount that TCM

had improperly back charged to Ankas—$40,172.[8]  To the extent that any of the evidence conflicted, the trial court, as factfinder, could have resolved the conflict in favor of Dyer.  *See City of Keller*, 168 S.W.3d at 820.

TCM argues that Dyer's evidence of extra-contractual, "miscellaneous tasks" is barred by the parol evidence rule.  The parol evidence rule did not bar testimony about the extra-contractual tasks because that evidence was not admitted to construe the terms of the written contracts upon which Ankas was underpaid.  *See Gail v. Berry*, 343 S.W.3d 520, 523 (Tex. App.—Eastland 2011, pet. denied) ("The parol evidence rule is a rule of substantive law which provides that, in the absence of fraud, accident, or mistake, extrinsic evidence is not admissible to vary, add to, or contradict the terms of a written contract that is facially complete and unambiguous.").

TCM contends that there is no evidence that Dyer gave it notice that Ankas expected to be paid for the "miscellaneous tasks" that Ankas performed, but Dyer testified that she documented those tasks and requested that Ankas be paid for them.  Moreover, it simply cannot be ignored that TCM paid Ankas approximately $194,000 for work that was not covered by any of the seven written contracts that Ankas and TCM had executed.  The trial court therefore could have reasonably inferred that TCM had notice that Ankas expected to be paid for all of the miscellaneous tasks.  *See City of Keller*, 168 S.W.3d at 821.

---

[8]This figure represents two different amounts that were improperly back charged—one for $16,946 and one for $23,226.

11

TCM further complains that the trial court's findings of fact "are insufficient to support a quantum meruit cause of action" because there is no specific finding that TCM had reasonable notice that Dyer expected compensation for the "miscellaneous tasks" that Ankas performed.[9]  "When a court makes findings of fact, but inadvertently omits an essential element of a ground of recovery or defense, the presumption of validity will supply the omitted element by implication."  *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *see* Tex. R. Civ. P. 299.  The trial court's findings implicate elements (1) and (2) of Dyer's quantum-meruit claim; consequently, the omission of the notice-of-compensation element is deemed to be inadvertent, and we presume that the trial court made the finding in support of its judgment.[10]  *See Vickery*, 5 S.W.3d at 252.

Lastly, TCM argues that Dyer cannot recover under a theory of quantum meruit because she entered into written construction contracts with TCM for the performance of work towards the renovation.  "[A]n express contract between the parties precludes a plaintiff from recovering for services rendered in quantum

---

[9]We note that that the trial court's conclusions of law address each quantum-meruit element.

[10]TCM directs us to *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942 (Tex. 1990), but it is inapposite.  There, the supreme court considered whether an *express* finding was sufficient to state the notice-of-compensation element.  *Id.* at 944–45.  We consider the opposite situation in this case—what effect the *omission* of that element from the trial court's findings has on the judgment, if any.

12

meruit if the contract covers *those* services or materials." *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 723 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (emphasis added) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000)). But "[w]hen the evidence shows that no contract covers the service at issue, [then] the question of whether a party may recover in quantum meruit is for the trier of fact." *Id.* at 724. As explained in detail above, no contract covered the amounts that Dyer sought to recover for the "miscellaneous tasks" that Ankas performed.[11]

The evidence is legally sufficient to support the trial court's judgment insofar as it is premised upon Dyer's breach-of-contract and quantum-meruit claims. *See City of Keller*, 168 S.W.3d at 807, 827. We overrule the remainder of TCM's second and fourth issues. Having overruled TCM's second and fourth issues, we need not address its third issue challenging Dyer's recovery under a sworn-account theory. *See* Tex. R. App. P. 47.1.

## V. OBJECTIONS

TCM argues in its fifth issue that the trial court erred by overruling its objections to Dyer's tendered exhibits. We concluded above that the evidence is legally sufficient to support the trial court's judgment even without considering the challenged exhibits. Therefore, any error in denying TCM's evidentiary

---

[11]Hence, our reference to those tasks as "extra-contractual."

13

objections was harmless. *See* Tex. R. App. P. 44.1(a). We overrule TCM's fifth issue.

## VI. RELEASES

In its sixth issue, TCM argues that all of Dyer's claims—or at a minimum, her claim for breach of the written contracts—are barred by "valid and enforceable" releases that she signed when TCM paid Ankas for work performed on the renovation. We construe TCM's argument as a challenge to the legal sufficiency of the evidence to support the trial court's implied finding that Dyer did not agree to release her claims against TCM for amounts remaining unpaid under the written contracts or for "miscellaneous tasks" performed.

A release is a contract. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). Therefore, it is subject to the same requirements as any other contract. *In re J.P.*, 296 S.W.3d 830, 835 (Tex. App.—Fort Worth 2009, no pet.). As we set out above, the existence of a valid, binding contract is one of the essential elements of a breach-of-contract claim. *See Rice*, 324 S.W.3d at 666. In that regard,

> [p]arties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind. Therefore, whether the parties intended to enter into a binding agreement is often a question of fact. It is only when the intent of the parties is clear and

14

> unambiguous on the face of the agreement may the court determine intent as a matter of law.

*McCoy v. Alden Indus., Inc.*, No. 02-12-00200-CV, 2015 WL 4268363, at *9 (Tex. App.—Fort Worth July 9, 2015, no pet.) (citations omitted).

The evidence shows that when TCM issued a check, it also required that a release be signed. Each form release stated that the corresponding payment was for "all amounts owed" to the contractor under a particular contract. However, according to Dyer, when she signed a release upon being given a check by TCM and the payment was for less than the total amount owed on the job for which the check was issued, she did not understand it to mean that Ankas had been paid in full. For example, the first check that Ankas received from TCM was for $45,000. Dyer explained that when TCM issued the check, Ankas had not yet performed any work in exchange for the partial payment; it was merely an advance for materials. Ozuna testified similarly—the lien releases were only for partial payment. Although each release contained language that was intended to match the release to a particular contract, six of the fourteen releases that Dyer signed referenced a date that did not correspond to any particular signed contract, and four of the releases failed to reference any corresponding contract at all.

The parties thus disputed whether a given release applied to all amounts owed under a corresponding contract or to only the amount then paid when the release was signed. Consequently, a fact issue existed as to whether the parties

15

achieved a meeting of the minds, and therefore formed a valid, binding contract, to release all amounts due and owing under a contract when Dyer signed a release for less than the total amount owed under the purported corresponding contract. The trial court chose to resolve the disputed issue in favor of Dyer— i.e., that Ankas had not agreed to release its claims for amounts remaining unpaid either under the written contracts or for the "miscellaneous tasks" performed—and given the conflicting evidence, we are not at liberty to disturb that finding. *See City of Keller*, 168 S.W.3d at 827; *see also Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 388–89 (Tex. 1997) (holding that waiver of lien releases did not bar recovery for extra-contractual work performed). We overrule TCM's sixth issue.

## VII. *CASTEEL* ERROR

Directing us to *Crown Life Insurance Co. v. Casteel*, TCM argues in its seventh issue that "[i]n the event this Court determines that one or more of the contracts found to have been breached below . . . , or the quasi-contractual theories under which the trial court awarded liability, cannot justify the judgment, then this Court must presume harm in the entirety of the judgment." *See* 22 S.W.3d 378, 388 (Tex. 2000) (holding that "when a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory."). We have not determined that any particular theory of recovery asserted by Dyer

16

cannot justify the judgment. Rather, we have concluded that legally sufficient evidence supports the trial court's judgment insofar as it is premised upon Dyer's claims for breach of contract and quantum meruit. For this and other reasons, this case involves no presumed-harm *Casteel* issue. We overrule TCM's seventh issue.

### VIII. ATTORNEY'S FEES

TCM argues in the first part of its eighth issue that Dyer is not entitled to recover attorney's fees because she did not specifically plead for their recovery pursuant to civil practice and remedies code chapter 38. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001–.006 (West 2015). If a party pleads facts which, if true, entitle her to the relief sought, then she need not specifically plead the applicable statute in order to recover under it. *Whallon v. City of Houston*, 462 S.W.3d 146, 165 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Mitchell v. LaFlamme*, 60 S.W.3d 123, 130 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Dyer generally pleaded for "[a]ttorney fees to be proved at [the] time of trial" and recited facts in her petition in support of that pleading. TCM did not specially except to the pleading. We hold that Dyer's pleadings were sufficient to support a claim for attorney's fees under chapter 38. *See, e.g.*, *Bancservices Grp., Inc. v. Strunk & Assocs., L.P.*, No. 14-03-00797-CV, 2005 WL 2674985, at *6 (Tex. App.—Houston [14th Dist.] Oct. 20, 2005, pets. denied) (holding that general pleading for attorney's fees, coupled with facts detailing claim for breach of

17

contract, was sufficient to support claim for attorney's fees under chapter 38); *Mitchell*, 60 S.W.3d at 130 (same).

In the other part of its eighth issue, TCM argues that Dyer failed to offer evidence of presentment under section 38.002(2) and made no showing of compliance with section 38.002(3). *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002(2), (3). To recover attorney's fees under chapter 38, "the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party," and "payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented." *Id.* No particular form of presentment is required. *France v. Am. Indem. Co.*, 648 S.W.2d 283, 286 (Tex. 1983). "[A]ll that is necessary is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to pay the claim." *Standard Constructors, Inc. v. Chevron Chem. Co.*, 101 S.W.3d 619, 627 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Here, Dyer submitted invoices to TCM for the work that Ankas had performed on the mall renovation, and Dyer testified that TCM failed to pay Ankas for certain contractual and extra-contractual work that Ankas performed on the renovation. The evidence was sufficient to show compliance with civil practice and remedies code sections 38.002(2) and (3). We overrule TCM's eighth issue.

18

## IX. Conclusion

Having overruled all of TCM's issues, we affirm the trial court's judgment.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DELIVERED:  October 1, 2015