J-S79016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARGARET JARRETT, EXECUTRIX OF THE ESTATE OF PHILIP JARRETT, DECEASED AND WIDOW IN HER OWN RIGHT | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 1229 EDA 2017 |
| CONSOLIDATED RAIL CORPORATION | : | |

Appeal from the Order Entered March 17, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): February Term, 2015 No. 1295

BEFORE: GANTMAN, P.J., LAZARUS, J., and OTT, J.

OPINION BY LAZARUS, J.: **FILED MARCH 23, 2018**

Margaret Jarrett ("Jarrett"), as Executrix of the Estate of Philip Jarrett, Deceased ("Decedent"), and in her own right, appeals from the order entered in the Court of Common Pleas of Philadelphia County, entering summary judgment in favor of Appellee Consolidated Rail Corporation ("Conrail"). Upon careful review, we affirm.

This matter arises from asbestos-related injuries sustained by Decedent in the course of his employment with Conrail and its predecessors-in-interest. In 1997, Decedent filed suit in the Philadelphia Court of Common Pleas under

the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*,[1] against

Conrail and other defendants, after he developed non-malignant asbestosis.

The case was settled in 2004 and Decedent executed a release which provided,

in relevant part, as follows:

> PHILLIP E. JARRETT, . . . on behalf of myself, my heirs, personal representatives and assigns, does hereby RELEASE AND FOREVER DISCHARGE . . . [Conrail] . . . of and from all liability for all claims or actions for all known and unknown, manifested and unmanifested, suspected and unanticipated pulmonary-respiratory diseases, and/or injuries including but not limited to medical and hospital expenses, pain and suffering loss of income, increased risk of cancer, fear of cancer, and *any and all forms of cancer*, including mesothelioma and silicosis, arising in any manner whatsoever, either directly or indirectly, in whole or in part, out of exposure to any and all toxic substances, including *asbestos*, silica, sand, diesel fumes, welding fumes, chemicals, solvents, toxic and other pathogenic particulate matters, coal dust, and all other dusts, fibers, fumes, vapors, mists, liquids, solids, or gases, during RELEASOR'S employment with RELEASEE. The parties agree that a portion of the consideration paid for this RELEASE is for the risk, fear, and/or possible future manifestation of the injuries or diseases described in this paragraph.
>
> . . .
>
> In entering into the RELEASE, RELEASOR declares that I have relied wholly upon my own judgment; that I am competent to understand and enter into this RELEASE; that I am not under any restraint or duress; that no representations about the nature and extent of my present or future condition, disabilities or damages made by any physician, attorney or agent of those hereby released, nor any representations regarding the nature and extent of legal liability of those hereby released, have induced me to

---

[1] FELA is a federal statute that provides the framework for handling claims of injury by federal railroad workers. ***Grisser v. National Railroad Passenger Corp.***, 761 A.2d 606, 608 (Pa. Super. 2000). Federal and state courts possess concurrent jurisdiction over FELA claims; when tried in a state court, federal substantive law is applied. ***Id.*** at 609.

make this settlement; that in determining the amount of settlement there has been taken into consideration not only my ascertained condition, disabilities and damages, but also that my present condition is permanent and may be progressive and recovery therefrom uncertain and indefinite, so that consequences may not now be fully known and could be more numerous and serious than now believed and that consequences not now anticipated may result.

. . .

RELEASOR hereby declares that he has executed this RELEASE on the advice and approval of his counsel; that he knows and understands the contents hereof and signs the same as his own free act with full knowledge that the effect hereof shall be such so as to extinguish and he hereby declares extinguished, now and forever, any and all claims described in this RELEASE.

. . .

CERTIFICATE

I hereby certify that on the day and year above specified, I explained the foregoing RELEASE to **PHILLIP E. JARRETT**, that I explained to him the legal consequences of the execution and delivery of said RELEASE and that he executed the same voluntarily and appeared to have full knowledge thereof[.]

Attorney for RELEASOR
/s/

Release Agreement, 1/6/04 (emphasis added).

Subsequently, in October 2014, Decedent was diagnosed with lung cancer. The Jarretts commenced another FELA action in the Philadelphia Court of Common Pleas on February 9, 2015, alleging that Decedent's workplace exposure to asbestos caused his cancer.[2] On January 10, 2017, Conrail filed a motion for summary judgment, arguing that the release Decedent signed in

_____

[2] During the course of the litigation, Decedent died and Jarrett, in her capacity as Executrix, was substituted as plaintiff.

- 3 -

2004 precluded recovery in the instant matter, as it had released Conrail from future liability related to any workplace-related pulmonary-respiratory diseases and/or injuries, including cancer, contracted after the execution of the release. In response, Jarrett argued that the issue of whether a release for a non-malignancy claim bars recovery for future malignancy claims is a question for a jury to decide. On March 17, 2017, the trial court granted summary judgment in favor of Conrail; Jarrett's motion for reconsideration was denied on March 29, 2017.

Jarrett filed a timely notice of appeal on April 5, 2017, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Jarrett raises the following questions for our review:

1. Did the [trial] court commit an error of law when it held that a release of a non-malignancy claim against a railroad under [section] 5 of FELA could include a future claim for malignancy that had not yet manifested itself?

2. Did the [trial] court err by granting summary judgment to [Conrail] on the basis of the release alone?

Brief of Appellant, at 4.

Entry of summary judgment is governed by Rule 1035.2 of the Rules of Civil Procedure, which provides as follows:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

Our standard of review of an appeal from an order granting summary judgment is well settled:  Summary judgment may be granted only in the clearest of cases where the record shows that there are no genuine issues of material fact and also demonstrates that the moving party is entitled to judgment as a matter of law. Whether there is a genuine issue of material fact is a question of law, and therefore our standard of review is de novo and our scope of review is plenary.  When reviewing a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party.

*Newell v. Montana West, Inc.*, 154 A.3d 819, 821–22 (Pa. Super. 2017) (citations and internal quotation marks omitted).

Jarrett first argues that the trial court erred in holding that the scope of the 2004 release, executed in settlement of a non-malignancy claim under FELA, encompassed a subsequent claim for a malignancy that had not yet manifested itself at the time the release was signed.  Jarrett asserts that, in enacting FELA, it was the intent of Congress to protect workers and prevent overreaching by an employer.  In keeping with that policy, Congress enacted section 5 of FELA, which provides as follows:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void[.]

45 U.S.C. § 55. Section 5 was passed "specifically to remedy the problem of railroads insisting on employment contracts with their employees discharging the company from liability for personal injuries." *Conway v. Delaware and Hudson Ry. Co.*, 909 A.2d 6, 7 n.2 (Pa. Super. 2006).

Jarrett argues that section 5 "foreclose[s] the possibility of settlement contracts of adhesion for injured railroad workers' FELA claims." Brief of Appellant, at 9. Because the protection of workers was Congress' paramount intent in enacting FELA, Jarrett asserts that a narrow interpretation of section 5 would best achieve that result. To that end, Jarrett urges us to follow the bright-line rule set forth in the decision of the Sixth Circuit Court of Appeals in *Babbit v. Norfolk W. Ry.*, 104 F.3d 89 (6th Cir. 1997), rather than the rule followed by the trial court, announced by the Third Circuit in *Wicker v. Conrail*, 142 F.3d 690 (3rd Cir. 1998).

In *Babbit*, the Sixth Circuit held that, to be valid, a FELA release "must reflect a bargained-for settlement of a _known claim_ for a _specific injury_, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown to him." *Babbit*, 104 F.3d at 93 (emphasis added). In contrast, in *Wicker*, the Third Circuit held that a FELA release "does not violate § 5 provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those _risks which are known_ to the parties at the time the release is signed." *Wicker*, 142 F.3d at 701 (emphasis added). Jarrett argues that the adoption of the *Babbit* bright-line rule, in which only _known claims_ could be released

- 6 -

under FELA, would result in greater protection of the worker, uniformity of settlements, the maintenance of safer workplaces, and the conservation of judicial resources.

In response, Conrail argues that this Court has already adopted the rule in *Wicker* in its decision in *Conway*, *supra*. As such, Conrail asserts, our inquiry should end there. Moreover, Conrail argues, where federal courts diverge on an issue, a state court should follow the federal court in its own region. Brief of Appellee, at 17, citing *Werner v. Plater-Zyberk*, 799 A.2d 776, 782 (Pa. Super. 2002) ("When the Third Circuit has spoken on a federal issue, the ultimate answer to which has not yet been provided by the United States Supreme Court, it is appropriate for this Court to follow Third Circuit precedent in preference to that of other jurisdictions."). Finally, Conrail argues that *Wicker* "is decidedly the better approach," in that it respects the expressed will of all parties in reaching a final resolution of all claims and encourages settlements. Brief of Appellee, at 17.

We conclude that the trial court properly applied the rule set forth in *Wicker*, as it has been deemed "controlling" by a prior panel of this Court. *See Conway*, *supra*. "It is well-settled that until the Supreme Court overrules a decision of this Court, our decision is the law of this Commonwealth." *Commonwealth v. Martin*, 727 A.2d 1136, 1141 (Pa. Super. 1999), citing *Commonwealth v. Leib*, 588 A.2d 922, 932 (Pa. Super. 1991). Moreover, no compelling circumstances exist to overrule *Conway* and adopt the rule in *Babbit*. The *Wicker* court engaged in a comprehensive

review of the cases that have applied section 5 and arrived at a cogent and well-reasoned test for determining the validity of a FELA waiver under section 5. First, the court found that a valid release "must at least have been executed as part of a negotiation settling a dispute between the employee and the employer." *Wicker*, 142 F.3d at 700. In this way, an employer is foreclosed from evading FELA liability as a condition of employment or separation. Next, the court noted that an "evaluation of the parties' intent at the time the agreement was made is an essential element of this inquiry." *Id.* In rejecting the bright-line rule established under *Babbit*, the court acknowledged the realities surrounding claims compromises.

> [I]t is entirely conceivable that both employee and employer could fully comprehend future risks and potential liabilities and, for different reasons, want an immediate and permanent settlement. The employer may desire to quantify and limit its future liabilities and the employee may desire an immediate settlement rather than waiting to see if injuries develop in the future. To put it another way, the parties may want to settle controversies about potential liability and damages related to known risks even if there is no present manifestation of injury.

*Id.* at 700-01.

The court arrived at the conclusion that "a release that spells out the quantity, location and duration of potential risks to which the employee has been exposed – for example toxic exposure – allowing the employee to make a reasoned decision whether to release the employer from liability for future injuries of specifically known risks does not violation § 5 of FELA." *Id.* at 701.

However, the court cautioned against the enforcement of overly-broad or generic releases, noting that "where a release merely details a laundry list of diseases or hazards, the employee may attack that release as boiler plate, not reflecting his or her intent." *Id.* In sum, the approach adopted by the *Wicker* court is highly fact-intensive and places the intent of the parties in the forefront of any inquiry. It also provides a realistic view of compromises and releases, while staying true to the prohibition on blanket relinquishments of rights contemplated by Congress in enacting FELA. Accordingly, Jarrett's first claim is meritless.[3]

Having concluded that the trial court properly framed its inquiry in terms of the *Wicker* test, we must now address Jarrett's claim that the trial court improperly granted summary judgment on the basis of the release alone. Jarrett cites *Conway* for "the proposition in *Wicker* that the inquiry is fact-intensive and that the facts thus will need to be resolved by the fact-finder." Brief of Appellant, at 24. Accordingly, Jarrett argues that her claim should have gone before a jury for a determination as to whether lung cancer was a "known risk" and/or whether the release was unenforceable as a general boilerplate release.

_____

[3] To the extent Jarrett claims the release is void under *Norfolk & Western Railway v. Ayers*, 538 U.S. 135 (2003), she is entitled to no relief, as *Ayers* is entirely inapposite. In *Ayers*, the Supreme Court considered whether a worker's recovery for his asbestosis-related "pain and suffering" include damages for fear of developing cancer, and concluded that it could. In *dicta*, the Court noted that an asbestosis claimant may bring a second action if cancer develops. However, the Court did not discuss section 5 and the matter had nothing to do with the validity of FELA releases.

Conrail counters that a party seeking to refute a FELA release bears the burden of establishing its invalidity. Faced with that burden, Conrail claims, Jarrett nonetheless did nothing to refute the presumption of validity created by language in the release barring claims for future cancer due to workplace exposure to asbestos. Conrail argues that Jarrett failed to "create a record to refute the fact that [Decedent] knew of the risk that he could develop cancer when he signed the [r]elease on the advice of counsel." Brief of Appellee, at 22. For that reason, Conrail argues that Jarrett's reliance on **Conway** is inapposite because, unlike here, the plaintiff in **Conway** presented sufficient evidence at the summary judgment phase to create a genuine issue of material fact. We agree.

On its face, the clear and unambiguous language of the release signed by the Decedent precludes subsequent recovery for "any and all forms of cancer . . . arising in any manner whatsoever . . . out of exposure to . . . asbestos . . . during [Decedent's] employment with [Conrail]." Release Agreement, 1/6/04, at 1. As Conrail correctly notes, the party attacking the validity of a FELA release bears the burden of proof as to its invalidity. **Callen v. Pennsylvania R. Co.**, 332 U.S. 625, 630 (1948) ("[T]he releases of railroad employees stand on the same basis as the releases of others. One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity[.]"). In her answer to Conrail's motion for summary judgment, Jarrett fails to raise any issue of material fact that would require the issue of the release's validity to be submitted to a jury.

Rather, her answer merely presents, in condensed form, the same legal arguments advanced on appeal. "[A] non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." **Ertel v. Patriot-News Co.**, 674 A.2d 1038, 1042 (Pa. 1996). **See** Pa.R.C.P. 1035.2(2) (summary judgment appropriate where adverse party bearing burden of proof at trial fails to produce evidence of facts essential to cause of action which in jury trial would require issues be submitted to jury). The mere propounding of legal theories, without any supporting evidence that would raise a question of fact, does not sustain that burden.

Here, Jarrett presented no evidence that the Decedent was unaware that cancer was a risk of asbestos exposure at the time he executed the release. Indeed, as the trial court noted, Jarrett "cannot possibly claim [Decedent] did not know that cancer was a risk of asbestos exposure, and it would be implausible to conclude [Decedent] did not know of his exposure to asbestos when he settled his prior asbestos-related case." Trial Court Opinion, 6/29/17, at 13. As such, no genuine issue of material fact existed such that a jury could return a verdict in Jarrett's favor. **Ertel**, **supra**. Accordingly, the trial court properly granted summary judgment in favor of Conrail.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/18