

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00369-CV

———————————————————

JUNE FISHER, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF ALAN FISHER, Appellant

V.

BNSF RAILWAY COMPANY, (INDIVIDUALLY AND AS SUCCESSOR-IN INTEREST TO THE BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY, ATCHISON AND QUINCY RAILROAD COMPANY, BURLINGTON NORTHERN, INC., AND BURLINGTON NORTHERN RAILROAD COMPANY), Appellee

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-330963-21

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Opinion by Justice Wallach

## OPINION

This is an appeal from a take-nothing summary judgment that presents a question of first impression in Texas involving the enforceability of a release of unknown future claims when settling an existing claim under the Federal Employers Liability Act (FELA). Alan Fisher (Alan) was a long-time employee of BNSF Railway Company and its predecessor entities (BNSF). As a result of Alan's employment-related exposure to toxic substances, including asbestos, he was diagnosed with asbestosis. In June 2006, while represented by counsel, Alan settled and released claims he had against BNSF for personal injuries arising from work-related exposures to various toxic substances, including asbestos. Alan executed a release of his claims, which included known claims and risks of unknown future claims, including for cancer, related to his work exposure to asbestos.

In 2016, Alan was diagnosed with lung cancer and died in 2018. His wife, June, individually and as representative of Alan's estate, filed suit on March 21, 2021 against BNSF, seeking to recover damages arising from Alan's cancer. June admitted that Alan's lung cancer was related to his exposure to asbestos while working for BNSF. BNSF moved for summary judgment based on Alan's prior release. Relying on *Babbitt v. Norfolk & Western Railway Co.*, June responded that the FELA prohibits the release of claims for future injuries not known to exist at the time of execution of the release. 104 F.3d 89, 93 (6th Cir. 1997). Relying on *Callen v. Pennsylvania Railroad Company*, BNSF responded that June's interpretation of the FELA was incorrect and that it

allows the release of unknown future claims where the parties' intent is to do so provided the employee is aware of the risk of such claims when the release is signed. 332 U.S. 625, 631 (1948). The trial court granted BNSF's motion for summary judgment and dismissed June's claims with prejudice. Finding no reversible error, we will affirm the judgment of the trial court.

## I. Background

Alan worked for BNSF for over forty years as a sheet metal worker. Around 2005, Alan hired an attorney for "a cognizable claim for his asbestosis injuries" arising from exposure to asbestos while employed by BNSF. In 2006, BNSF and Alan settled his asbestos-exposure claim. BNSF paid Alan $29,500, and Alan executed a release approved by his attorney. That release provided a "full compromise, settlement, discharge and satisfaction" of "all claims, demands, or causes of action" against BNSF "on account of all illnesses and injuries to the person, including those that may hereafter develop as well as those now apparent and all complications thereof." The release covered all claims "including, but not limited to, any claim or cause of action, *known or unknown, present or future*, for alleged injury, damages, expenses, or death arising out of any *alleged exposure to "Asbestos," "Asbestos Containing Materials,"* or other "Toxic Substances *during the course of my employment with BNSF Railway Company.*" [Emphasis added.] It also specifically released BNSF "for all suits, actions, causes of action, claims and demands of every character whatsoever *[for] asbestos-related illnesses including but not limited to cancer, risk of cancer, and fear of cancer."* [Emphasis added.] Alan represented that he "fully understood and voluntarily accepted" the settlement's

3

terms. He also represented that he relied upon his counsel's advice, that his attorney "completely explained" the agreements in the release, and that he did not rely on any representations from BNSF. Alan executed the release, and his attorney signed it as "APPROVED." June signed as a witness.

Subsequently, Alan became ill and was diagnosed with lung cancer. He passed away in 2018. In March 2021, June sued BNSF under the FELA, alleging that BNSF negligently exposed Alan to asbestos and other toxic substances, and that the exposure led to his lung cancer and death. June conceded that Alan developed "asbestos-related cancer." BNSF denied liability and asserted that the 2006 release barred June's suit. BNSF moved for summary judgment on that basis, and the trial court granted BNSF's motion.

## II. Legal Standards

We review an order granting summary judgment de novo. *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 536 (Tex. 2019). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We must consider whether reasonable and fair-minded jurors could differ in their conclusions considering all of the evidence presented. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d

802, 822–24 (Tex. 2005). In a traditional summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. Traditional summary judgment is improper if there is more than a scintilla of probative evidence raising genuine issues of material fact. *Petit v. Maxwell*, 509 S.W.3d 542, 546–47 (Tex. App.—El Paso 2016, no pet.).

When a defendant moves for summary judgment on an affirmative defense, "he has the burden to conclusively prove all the essential elements of its defense as a matter of law, leaving no issues of material fact." *Garza v. Williams Bros. Const. Co.*, 879 S.W.2d 290, 294 (Tex. App.—Houston [14th Dist.] 1994, no writ). If the defendant meets his initial burden by "establish[ing] his right to an affirmative defense as a matter of law, the burden shifts to the plaintiff to produce controverting evidence that raises a fact issue on the defendant's affirmative defense." *Id.* at 294–95. Even then, the burden remains on the defendant to negate the issues raised to conclusively establish its right to summary judgment. *Id.* at 295.

A contractual release is an affirmative defense. *See* Tex. R. Civ. P. 94. To establish its elements, "the party asserting the defense of release is required to prove the elements of a contract." *In re J.P.*, 296 S.W.3d 830, 835 (Tex. App.—Fort Worth 2009, no pet.). Because the FELA is a federal statute, the "FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing

5

them is federal." *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S. Ct. 1347, 1348 (1985); *BNSF Ry. Co. v. Phillips*, 485 S.W.3d 908, 910 (Tex. 2015).

BNSF, as summary judgment movant, initially bore the burden of showing there is no issue of material fact and that it was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a. The review begins with the release language. *Callen*, 332 U.S. at 630, 68 S. Ct. at 298 (noting that releases of railroad employees stand on the same basis as the releases of others and are entitled to prima facie validity); *Mendoza-Gomez v. Union Pac. R.R. Co.*, No. 4:19-CV-4742, 2021 WL 3469998, at *4 (S.D. Tex. July 27, 2021), *aff'd,* No. 21-20397, 2022 WL 1117698, at *3 (5th Cir. Apr. 14, 2022) (not for publication). Where it is undisputed that an employee signs a release of the FELA claim, federal law shifts the burden to the nonmovant to establish the invalidity of the release. *Callen*, 332 U.S. at 630, 68 S. Ct. at 298 ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity . . . ."); *Wicker v. Consol. Rail Corp.*, 142 F.3d 690, 696 (3d Cir. 1998)); *see also Jarrett v. Consol. Rail Corp.*, 185 A.3d 374, 380 (Pa. Super. Ct. 2018); *Blackwell v. CSX Transp., Inc.*, 102 A.3d 864, 868 (Md. Ct. Spec. App. 2014); *Jaqua v. Canadian Nat'l R.R., Inc.*, 734 N.W.2d 228, 232 (Mich. Ct. App. 2007).

## III. Analysis

June contends that the trial court erred in granting the summary judgment for two reasons: (1) Section 5 of the FELA bars releases of future injuries, rendering the release unenforceable (Section 5 issue), or (2) genuine fact issues exist regarding the

parties' intent regarding the release of future risks when the release was executed. We will overrule both points and affirm the take-nothing judgment of the trial court.

### a. Clean Slate on Section 5 Issue

The Section 5 issue concerns whether Section 5 voids a release of unknown future claims made as part of the settlement of an existing claim made under the FELA. 45 U.S.C. § 55. We begin our analysis by determining where we must look to find our basis for decision. Both sides agree that the United States Supreme Court has not decided the issue of whether Section 5 prohibits an injured worker from releasing unknown future claims as part of the settlement of an existing claim. Both parties acknowledge that there is a split of authority in the federal circuits and in other state courts on this question, and no Texas state court has addressed the issue. We therefore are writing from a clean slate. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) ("While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate federal rule of decision, they are obligated to follow only higher Texas courts and the United States Supreme Court."); *see also In re Morgan Stanley & Co. Inc.*, 293 S.W.3d 182, 189–90 (Tex. 2009); *Johnson v. Nat'l Oilwell Varco, LP*, 574 S.W.3d 1, 10 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

### b. Split of Authority on Section 5 Issue

The validity of releases under the FELA raises a federal question to be determined by federal law rather than state law. *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 335, 108 S. Ct. 1837, 1842 (1988); *Dice v. Akron, Canton & Youngstown R.*

7

*Co.*, 342 U.S. 359, 361, 72 S. Ct. 312, 314 (1952). Section 5 of the FELA provides that

"[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which

shall be to enable any common carrier to exempt itself from any liability created by

this [act] shall to that extent be void." 45 U.S.C. § 55.

> The United States Supreme Court has held,

> It is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation.

*Callen*, 332 U.S. at 631, 68 S. Ct. at 298–99. As noted by the Virginia Supreme Court,

> Application of § 5 of FELA remains unclear in many respects. The United States Supreme Court has not clarified what constitutes a "controversy" that parties may settle without litigation. *Wicker*, 142 F.3d at 698 ("Although the Supreme Court in *Callen* refused to void the releases executed in compromise of an employee's claims, the Court has not had occasion to explain how wide a net its ruling casts."). Courts have diverged when a release attempts to extinguish claims for known injuries *and also for known risks of future injuries that have yet to, and may never, manifest.*

*Cole v. Norfolk S. Ry. Co.*, 803 S.E.2d 346, 350 (Va. 2017) (emphasis added).

A split in the federal circuits has developed regarding the validity of such

releases. The first approach comes from the Sixth Circuit's decision in *Babbitt*, where

the court adopted a bright-line rule under which a release is only valid as to a known,

existing injury—not to future, undiagnosed conditions. 104 F.3d at 93. In *Babbitt*, the

trial court held that a prior release signed by former employees did bar their suit for

hearing loss caused by excessive noise levels at the defendant railroad's facilities. *Id.* at

90–91. The employees signed the releases as part of an early-retirement program. *Id.*

8

at 90. The railroad nonetheless argued that several plaintiffs were aware of their hearing problems before signing the release, thus proving that the releases specifically contemplated their claims. *Id.*

The Sixth Circuit disagreed. After surveying Section 5's text and U.S. Supreme Court opinions, the court held that an employee could validly release a claim "that settles a specific injury sustained by an employee." *Id.* at 93. But under Section 5, that release could only go so far: "To be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." *Id.* The release would bar the plaintiffs' claims only if it "was clearly executed as a settlement for" their "specific injuries in controversy." *Id.*

Thus, in *Babbitt*, the Sixth Circuit "adopted a bright[-]line rule that a release may be valid only regarding . . . injuries that are known at the time the release is executed." *Loyal v. Norfolk S. Corp.*, 507 S.E.2d 499, 502 n.4 (Ga. Ct. App. 1998). Other courts have applied that test. *See, e.g.*, *Chacon v. Union Pac. R.*, 56 Cal. App. 5th 565, 580 (Cal. Ct. App. 2020) (release for prior accident did not bar later suit for future, unrelated claims for exposure to toxic substances); *Arpin v. Consol. Rail Corp.*, 75 N.E.3d 948, 955 (Ohio Ct. App. 2016) (release settling previous nonmalignant asbestosis claim did not bar subsequent cancer-related claim); *Anderson v. A.C. & S., Inc.*, 797 N.E.2d 537, 544 (Ohio Ct. App. 2003) (release of asbestos-exposure claim did not bar later claim for mesothelioma).

The second approach originated from the Third Circuit in *Wicker v. Conrail*, where the court analyzed the enforceability of releases that resolved alleged FELA liability claims against the railroad. 142 F.3d at 699. There, multiple rail workers previously executed releases for injuries unrelated to the chemical exposure claims they made in the later lawsuits. *Id.* at 692–93, 699. The trial court granted the railroad's summary judgment motions in the exposure lawsuits based upon the prior releases. *Id.* at 694.

On appeal, the Third Circuit analyzed the releases in light of the FELA's Section 5. *Id.* at 696–701. Relying on *Callen*, the court held that "[r]eleases are not per se invalid under FELA." *Id.* at 697. The court held that the release of the FELA claim is valid "provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those *risks* which are *known* to the parties at the time the release is signed." *Id.* at 701 (emphasis added). In contrast, it wrote that "[c]laims relating to *unknown risks* do not constitute 'controversies,' and may not be waived under [Section] 5 of FELA." *Id.* (Emphasis added). Thus, a release does not violate Section 5 when it "spells out the quantity, location and duration of *potential risks* to which the employee has been exposed . . . allowing the employee to make a reasoned decision whether to release the employer from liability for future injuries of *specifically known risks*." *Id.* (emphasis added). Ultimately, the court held that a release satisfies the FELA when it "is limited to those *risks* which are known by the parties at the time the release is negotiated." *Id.* at 702 (emphasis added).

The Third Circuit later applied *Wicker* in a nearly identical case to this one and held that the release barred a subsequent FELA cancer claim. *Collier v. CSX Transp., Inc.*, 673 F. Appx 192, 196–98 (3d Cir. 2016) (not for publication). There, a rail worker brought a claim alleging exposure to asbestos and other contaminants. *Id.* at 194. The worker settled his claim and released the railroad from liability for all diseases, "including cancer, arising from or contributed to by exposure to any and all toxic substances." *Id.* Years later, the worker was diagnosed with lung cancer, and he brought suit based on that same allegedly negligent exposure. *Id.* The Third Circuit affirmed the trial court's dismissal, succinctly explaining that "Collier sued CSX based on his exposure to asbestos and settled that claim by executing a release that specifically released any claim for cancer that might arise from his work-related exposure." *Id.* at 197. The court thus concluded the rail worker *"could not plausibly claim that he did not know that cancer was a risk of asbestos exposure." Id.* (emphasis added).

It has been reported that the majority of state and federal courts which have considered this issue have followed *Wicker. Murphy v. Union Pac. R.R. Co.*, 574 S.W.3d 676, 682 (Ark. Ct. App. 2019) ("We choose to follow the majority of state and federal courts that have held *Wicker* is the better standard."); *see also Cole v. Norfolk S. Ry. Co.*, 803 S.E.2d 346, 352 n.1 (Va. 2017) (noting that the *Wicker* test has been adopted by the majority of courts which have considered the question); *Ward v. Ill. Cent. R.R. Co.*, 271 So. 3d 466, 472–73 (Miss. 2019) (applying *Wicker*, holding that prior asbestos release covered subsequent FELA cancer claim); *Jarrett*, 185 A.3d at 378–79 (same);

11

*Cole*, 803 S.E.2d at 354–55 (same); *Jaqua*, 734 N.W.2d at 237 (same); *Oliverio v. Consol. Rail Corp.*, 822 N.Y.S.2d 699, 703 (N.Y. Sup. Ct. 2006) (same).

Finally, some courts have declined to adopt either *Wicker* or *Babbitt*. A recent case from a district court within the Fifth Circuit exemplifies this position. *Mendoza-Gomez*, 2021 WL 3469998, at *4, *5. The plaintiff was a long-time employee of Union Pacific Railroad Company (UP). In 2012, UP paid him an undisclosed sum of money (amount redacted from the release submitted for summary judgment) to settle an injury claim arising from exposure to asbestos and silica. The release agreement provided that it was a

> full and complete compromise of any and all Claims which have accrued or which may hereafter accrue in favor of [Plaintiff] and against Union Pacific as a result of [Plaintiff's] alleged illnesses, injuries, cancers, future cancers, diseases, and/or death . . . as a result of Alleged Exposures while [Plaintiff] was employed by Union Pacific.

*Id.* at *4. The agreement defined "Alleged Exposure" as "any and all exposures by breathing, touching, ingesting, or otherwise, to any toxic materials, asbestos, dusts, fumes, gases, metals or chemicals, alleged to be Caused or contributed to by . . . Union Pacific." *Id.* at *5. The release "not only includes Claims which are presently existing or known, but also claims which may develop or become known in the future." *Id.* at *4.

The plaintiff thereafter was diagnosed with lung cancer and asbestosis. *Id.* at *1. He sued UP for damages under the FELA for cancer and asbestosis related to his exposure to various substances, including asbestos and silica. *Id.* at *5. UP moved for summary judgment based on the 2012 release. *Id.* at *4. The plaintiff argued that the

12

release was void under *Babbitt* and sought to distinguish *Wicker*. The trial court found neither *Babbitt* nor *Wicker* to be binding. *Id.* at \*4. It granted summary judgment to UP on the face of the release, holding that the release covered future claims for illnesses, including cancer as a result of alleged exposure to the substances identified in the release, one of which was asbestos. These were future risks disclosed on the face of the release executed as part of a full compromise of litigation. Thus, they were not barred under Section 5. *Id.* at \*4 (citing *Callen*, 332 U.S. at 631).

Although the Fifth Circuit opinion affirming the district court's summary judgment was not published, we find the court's analysis informative. Like the district court, the Fifth Circuit held that the release was an enforceable agreement between the parties and did not violate the FELA's Section 5 since it was part of the compromise of litigation, citing to *Callen*. The plaintiff raised a recent district court opinion, *Hartman v. Ill. R.R. Co.*, No. 20-1633, 2022 WL 912102, at \*1–2 (E.D. La. Mar. 29, 2022), where a plaintiff challenged the validity of the FELA release of future claims because the release language was boilerplate (settlement of a middle-finger injury claim being used to release a subsequent cancer claim), applying *Wicker*. *Mendoza-Gomez v. Union Pac. RR., Co.*, No. 21-20397, 2022 WL 1117698, at \*3 n.1 (5th Cir. Apr. 14, 2022).[1] The Fifth Circuit, after pointing out that it was not bound by a district court decision, distinguished that release with the following comment,

---

[1]*Mendoza-Gomez* indicates that the injury in *Hartman* was to the plaintiff's thumb. *Id. Hartman* states the injury was to the plaintiff's middle finger. 2022 WL 912102, at \*1.

13

Unlike Hartman, Mendoza-Gomez's original claim against the railroad company involved his alleged exposure to toxic chemicals—not a thumb injury. *Consequently, the release Mendoza-Gomez signed was specific to the types of injuries involved in his original complaint against Union, as well as those he claimed he suffered years later—including "cancers" and "future cancers." In other words, the list of claims Mendoza-Gomez released was not a boilerplate list of hazards unrelated to his current claims and he cannot now claim that the release did not evince his clear intent to release Union from liability for his alleged cancer in this suit.* For these reasons, we conclude that *Hartman*, even if controlling, would have no bearing on Mendoza-Gomez's appeal.

*Id.* (emphasis added).

### c. Resolution of Section 5 Issue

First, we decline to adopt the bright-line test adopted in *Babbitt*. The cases cited above demonstrate that the *Babbitt* bright-line rule is the minority position in the state and federal courts that have examined the question, which the parties do not dispute. For the reasons explained in *Jaqua*, *Loyal*, *Oliverio*, and *Illinois Central Railroad Co. v. Acuff*, 950 So. 2d 947, 960 (Miss. 2006), we decline to adopt the *Babbitt* rule.[2]

---

[2]*Jaqua*, 734 N.W.2d at 229 ("The rationale in *Wicker* allows the employer and the employee the freedom to negotiate and settle claims, but protects the employee from releasing the employer for unknown liability that was not considered and resolved in an informed manner."); *Loyal*, 507 S.E.2d at 502 ("Clearly, in an industry, such as the railroad industry, that has a number of known occupational risks and diseases, it is important to both the employer and employee to be able to settle potential claims regarding injuries or diseases prior to actual discovery."); *Oliverio*, 822 N.Y.S.2d at 701–02 (stating that while the *Babbitt* approach may appear to "enable an easier resolution of the manner in which a release is enforced, the result may be either more complicated inquiry into the exact nature and scope of the injury compromised[ ] or a chilling effect on the resolution by compromise of any claims," and, further, that "[t]his result would not further the public policy of encouraging settlement of claims."); *Ill. Cent. R.R. Co.*, 950 So. 2d at 960 ("We believe that *Babbitt*'s rule barring the release of future claims unfairly restricts the ability of an employer and employee to knowingly and voluntarily settle both current and future claims, should the parties so desire.").

14

Second, we need not decide whether it is necessary to adopt the *Wicker* rule. The result is the same in this case whether we apply the *Wicker* rule or the *Mendoza-Gomez* analysis.

We begin with the *Wicker* rule application, which is best exemplified in the *Jarrett* case. Jarrett was employed by Conrail. He developed non-malignant asbestosis and filed suit against Conrail under the FELA in 1997. In 2004, he settled his case and executed a release for that claim and

> for all claims or actions for all known and unknown, manifested and unmanifested, suspected and unanticipated pulmonary-respiratory diseases, and/or injuries including but not limited to medical and hospital expenses, pain and suffering[,] loss of income, *increased risk of cancer, fear of cancer, and any and all forms of cancer, including mesothelioma and silicosis*, arising in any manner whatsoever, either directly or indirectly, in whole or in part, out of exposure to any and all toxic substances, *including asbestos*, silica, sand, diesel fumes, welding fumes, chemicals, solvents, toxic and other pathogenic particulate matters, coal dust, and all other dusts, fibers, fumes, vapors, mists, liquids, solids, or gases, during RELEASOR'S employment with RELEASEE.

*Jarrett*, 185 A.3d at 375. The release also acknowledged that he relied on his own judgment with the advice and approval of his own counsel. *Id.* at 376.

In 2014, Jarrett developed asbestos-related lung cancer from his exposure to asbestos while working for Conrail. Jarrett and his wife sued Conrail again under the FELA; during the proceedings Jarrett died and his wife took over the litigation as representative of his estate and for her own recovery. *Id.* at 376 n.2. Conrail moved for summary judgment asserting the 2004 release as a bar to the claims "as it had released Conrail from future liability related to any workplace-related pulmonary-respiratory diseases and/or injuries, including cancer, contracted after the execution of

15

the release." *Id.* Jarrett responded that whether a release for a non-malignant condition bars recovery for future malignancy claims is a jury question. *Id.* Jarrett did not offer any evidence to question the validity of the release. The trial court granted Conrail's motion for summary judgment.

The court noted that the *Wicker* rule governed the case, *id.* at 379, and that the party challenging the validity of the release, Jarrett, had the burden to establish its invalidity. *Id.* at 379–80. The court found the release to be clear and unambiguous on its face that it released future claims for "'any and all forms of cancer . . . arising in any manner whatsoever . . . out of exposure to . . . asbestos . . . during [Decedent's] employment with [Conrail],'" *id.* at 379, which was exactly what Jarrett was alleging. The appellate court then applied the familiar standard for summary judgment proceedings,

> [A] non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ertel v. Patriot–News Co.*, 544 Pa. 93, 674 A.2d 1038, 1042 (1996). *See Pa.R.C.P.* 1035.2(2) (summary judgment appropriate where adverse party bearing burden of proof at trial fails to produce evidence of facts essential to cause of action which in jury trial would require issues be submitted to jury). The mere propounding of legal theories, without any supporting evidence that would raise a question of fact, does not sustain that burden.

16

*Id.* at 380. The court then affirmed the summary judgment for Conrail, noting that Jarrett had brought forth no factual evidence to challenge the validity of the release. *Id.* at 380.[3]

In *Mendoza-Gomez*, the district court rejected both *Babbitt* and *Wicker* as controlling authority. 2021 WL 3469998, at *4. Although the Fifth Circuit did not address the *Babbitt* versus *Wicker* issue, both the district court and the Fifth Circuit found the release enforceable under the FELA's Section 5, citing *Callen*, because the release was given for consideration in settlement of an existing FELA claim and the release clearly anticipated and covered the risk of future claims being asserted in the subsequent litigation. *Mendoza-Gomez*, 2022 WL 1117698, at *3; *Mendoza-Gomez*, 2021 WL 3469998, at *4–5.

Of note, in affirming the summary judgment for UP, the Fifth Circuit cited to *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020), involving, in part, a Title VII intentional discrimination case. The employer moved for summary judgment. Because the plaintiff provided no direct evidence of racial discrimination, the court employed a burden shifting process where the plaintiff had the burden of establishing a prima facie case of racial discrimination. If that burden is met, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's action. If the employer meets that burden, the plaintiff must show that the stated

---

[3]A similar result can be found in other cases applying the *Wicker* rule. *See, e.g., Ward*, 271 So. 2d at 472–73; *Jaqua*, 734 N.W.2d at 237; *Collier*, 673 Fed. Appx. at 196–97.

17

reason was a pretext. *Id.* at 561–62. Because the plaintiff failed to meet her burden, the court held that her claim failed on her first claim.

We infer, from the court's reliance on *Sanders*, an analogy that UP established its right to judgment as a matter of law based on the face of the release and, since Mendoza-Gomez had not established a basis to avoid the release, that UP was entitled to judgment. *Cf. Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) ("In a subsequent suit for an unknown injury, once the affirmative defense of release has been pleaded and proved, the burden of proof is on the party seeking to avoid the release to establish mutual mistake.").

The uncontroverted evidence here is that in 2005 Alan made a cognizable FELA claim against BNSF for injuries related to asbestos exposure. BNSF agreed to pay money to Alan for a release of those claims, which Alan accepted. The release covered that claim, and it also provided for a release of future claims arising from his exposure to asbestos, including cancer related to such exposure. He thereafter developed asbestos-related cancer and made this claim against BNSF under the FELA, which his wife now pursues as his estate representative. The release, on its face, is unambiguous and clearly reflects that the current claim for asbestos-related cancer was a risk within the contemplation of the parties at the time the release was signed. Alan was represented by counsel who approved the release. Such being the case, BNSF established its right to summary judgment as a matter of law and the burden shifted to June to bring forth evidence to raise a prima facie basis for invalidity

18

of the release. She did not do so. Therefore, under either *Wicker* or *Mendoza-Gomez*, either of which is consistent with Texas summary judgment procedure, the trial court did not err in granting summary judgment in favor of BNSF. We overrule June's issue number one.

### d. No Fact Question on Intent to Release Future Claims

In the trial court, June filed her Response to Defendant's Motion for Summary Judgment. She did not file any evidence in support of her response. In fact, she contended in that response that "[t]he only pertinent issue currently before the court is whether a release purporting to bar future, unknown injuries, is valid pursuant to 45 USC 55." June's response consisted of legal arguments in support of that legal contention. However, she now contends that "[a]t any rate, genuine issues of material fact exist as to the parties' intent on future risks at the time of executing the release, thus rendering summary judgment inappropriate."

Because the existence of a fact issue on intent on future risks was not raised at the trial court, it was waived. *Babineaux v. Citimortgage, Inc.*, No. 02-17-00124-CV, 2017 WL 6616239, at *6 (Tex. App.—Fort Worth Dec. 21, 2017, pet. denied) (mem. op.) (stating appellate court cannot reverse a summary judgment on a ground not advanced in the trial court). However, assuming the point was not waived, it is without merit. June's response was a collection of legal arguments. Legal arguments are insufficient to create a fact issue on appeal. *Jarrett*, 185 A.3d at 380; *cf Maximusalliance Partners, LLC v. Faber*, No. 05-13-01688-CV, 2015 WL 707033, at *9 (Tex. App.—Dallas Feb. 17, 2015, no pet.) (mem. op.) ("[N]o evidence is identified

19

by which a trial court could determine the existence of a material issue of fact . . . ."); *Ellis v. Renaissance on Turtle Creek Condo. Ass'n, Inc.*, 426 S.W.3d 843, 855 (Tex. App.—Dallas 2014, pet. denied) ("[Nonmovant's] argument in his summary judgment response does not constitute evidence and therefore cannot raise a fact issue."). We overrule June's issue number two.

## IV.   Conclusion

Having overruled both of June's points on appeal, we affirm the judgment of the trial court.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: July 14, 2022