

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00425-CV

———————————————

DONNA PAYNE, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF NEIL HARRAH, Appellant

V.

BNSF RAILWAY COMPANY, (INDIVIDUALLY AND AS SUCCESSOR-IN INTEREST TO THE BURLINGTON NORTHERN & SANTA FE RAILWAY COMPANY, ATCHISON AND QUINCY RAILROAD COMPANY, BURLINGTON NORTHERN, INC., AND BURLINGTON NORTHERN RAILROAD COMPANY), Appellee

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-330474-21

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Opinion by Justice Wallach

# OPINION

This is an appeal from a take-nothing summary judgment. Donna Payne, individually and as representative of her father Neil Harrah's estate, sued BNSF Railway Company (BNSF) under the Federal Employers Liability Act (FELA) for personal injuries to Harrah from exposure to asbestos that ultimately resulted in his death from cancer. Harrah worked for BNSF Railway Company (or its predecessors) for 47 years, during which he was regularly exposed to asbestos and other substances. As a result, he developed and was diagnosed with asbestosis. After filing a lawsuit, he negotiated a release with BNSF. The release purported to discharge not only his existing claim for asbestosis, but also all future claims, including cancer claims, for any injury arising out of his exposure to asbestos and other substances. Two years after executing the release, he was diagnosed with lung cancer. He died a year and eight months later. Based on the prior release, BNSF moved for summary judgment, which the trial court granted. The outcome of this case is governed by our opinion in *Fisher v. BNSF Ry. Co.*, No. 02-21-00369-CV (Tex. App.—Fort Worth July 14, 2022, no pet. h.) handed down this day. We will affirm the judgment of the trial court.

## I. Background

In 1957, Harrah began working for what is now BNSF Railway Company. He was a fireman and locomotive engineer. While working on (or near) BNSF's locomotives and facilities, he was exposed to asbestos and other toxic substances. He

2

voluntarily retired around 1994, at age 62. He later developed and was diagnosed with asbestosis, a non-cancerous occupational lung disease.

Harrah sued BNSF in Arizona state court in 2015. In his complaint, he alleged that his asbestosis resulted from BNSF's negligence and sought "money damages for the injuries suffered as herein alleged." In January 2017, Harrah and BNSF settled Harrah's asbestosis claim. The settlement was spelled out in a six-page agreement titled "Full and Final Settlement Agreement." Hereinafter referred to as the 2017 Release, it provided,

> I, Neil Harrah, . . . hereby release . . . BNSF . . . from any and all claims and liabilities of every kind or nature, for occupational disease, personal injury, or wrongful death, INCLUDING CLAIMS FOR INJURIES, ILLNESS, OR DAMAGES, IF ANY, WHICH ARE UNKNOWN AT THE PRESENT TIME, arising out of or resulting from any alleged exposure to toxic or harmful substances, **as described in Releasor's petition, complaint, statement, discovery, including any expert reports and medical records,** allegedly caused, in whole or in part, by the Released Parties.
>
> . . . .
>
> I understand . . . that the diseases . . . released herein include . . . asbestosis, . . . *cancer of any kind, and increased risk of cancer, including lung cancer* . . . or other allegedly asbestos-related cancer of any form, *whether such cancer exists on or before the date of this Release or develops in the future;* death, emotional distress of any kind, including fear of cancer, whether or not Releasor ever suffered from such injury, condition or disease.
>
> *It is the intention of both the Releasor and BNSF* that this Release and Settlement Agreement constitutes an immediate and permanent settlement of all of Releasor's claims that may arise, even though not now existent from the occupational exposures to asbestos and other toxic materials described in Releasor's complaint, petition, deposition, statement, expert report, or medical records. The occupational exposures Releasor described in such complaint, petition, deposition, statement, expert report, or medical records suggest that *Releasor may have been at an*

3

*increased risk for future development of cancer, including, but not limited to lung cancer and malignant mesothelioma.* **Releasor acknowledges awareness of this information.***"*

*. . . [T]he parties agree that the above settlement amount accepted by Releasor includes consideration to fully and finally resolve the Releasor's risk of developing cancer and/or malignant mesothelioma as a result of the alleged exposures to asbestos* and other toxic materials referred to above. *Releasor acknowledges and agrees that the amount accepted in settlement includes compensation for the risk of future cancer and is fair and reasonable considering the extent of any increased risk of malignancy. Releasor expressly recognizes and appreciates that he/she may be at risk of the future development of additional conditions, including cancer or mesothelioma, as well as other injuries and death, and damages as a result of my alleged exposures. Notwithstanding, it is Releasor's informed intent to release any and all such conditions, injuries, and damages with this settlement.*

*Releasor hereby. acknowledges that acceptance of this settlement amount forever precludes any further recovery from BNSF for the development of any malignancy caused in whole or in part, by occupational exposures to asbestos . . . . Releasor expressly acknowledges that he/she is aware of the risk of potential development of additional related conditions including cancer and malignant mesothelioma as a result of the exposures referred to above, and it is the intent of Releasor to include such potential future conditions in this Release and Settlement Agreement.* [Bold emphasis in original. Italics emphasis added.]

At the end of the release, above Harrah's signature, the release contained what might be described as a black box warning. The following language is contained in a box outlined by a bold black line, with the following language in bold black letters,

**I agree that I have had a full opportunity to read this Release, have read the Release, and have further had the opportunity to have it reviewed and explained to me by an attorney of my choice. I understand that this Release is intended to extend to any potential claims, past or future, of which I do not presently know of or suspect to exist at the time of executing this Release relating to the exposures alleged which, if known, may have affected the settlement but, notwithstanding, it is my desire and decision to fully and finally resolve any such claims for all time, including, but not limited to, future cancers and death. I fully understand the terms of this Release and they are voluntarily accepted by me.**

4

Harrah executed the 2017 Release before a notary public. Although the release included a preprinted line marked "Approved" by "Attorney for Plaintiff," the line is unsigned. And two additional preprinted signature lines marked "Witness" are likewise unexecuted. In exchange for this release, BNSF paid Harrah the sum of $14,500. In December 2018—two years later—Harrah was diagnosed with lung cancer. He died from its effects in September 2020.

In March 2021, Payne—acting in her individual capacity and as representative of Harrah's estate—sued BNSF for negligence, negligence per se, gross negligence, and wrongful death under the FELA. She alleged that BNSF breached its duties to provide Harrah with a reasonably safe workplace, to warn him of the substances' toxicity, to provide him with appropriate protective equipment, and to comply with governing standards. As a proximate result of that breach, Payne alleged, Harrah developed asbestosis and later lung cancer, the latter of which led to his death.

BNSF moved for summary judgment, arguing that the 2017 Release barred Payne's lawsuit. According to BNSF, that release fully settled "all past and future claims against BNSF for occupationally-related diseases (and death) resulting from alleged workplace exposures during Harrah's former employment at BNSF," including Payne's claims arising out of her father's lung cancer and resulting death. Payne disagreed. She did not dispute the prior suit or the fact of the 2017 Release. She instead argued that the release was limited to, at most, asbestosis. She then explained why, under Section 5 of the FELA, the release did not bar her claims for her father's

lung cancer. In particular, Payne argued that the 2017 Release was not effective in releasing unknown future claims under *Babbitt v. Norfolk & Western Railway Company*, 104 F.3d 89, 93 (6th Cir. 1997) (holding that release given as part of a settlement of an existing FELA claim is enforceable as to injuries known to exist at the time of the settlement but not unknown future injuries). Alternatively, Payne contended that this release was ineffective to release Harrah's cancer claim because BNSF failed to establish that such was the intent of the parties when the release was signed, under *Wicker v. Consolidated Rail Corporation*, 142 F.3d 690, 702 (3d Cir. 1998) (holding that a release of future claims made as part of the settlement of an existing FELA claim is enforceable if the release of future claims was within the intent of the parties and the future claim was within the scope of the release). Although Payne alleged there were fact issues on the intent of the parties to this release regarding coverage for risk of future injuries, she did not bring forward any evidence in response to BNSF's summary judgment motion to support this contention. The trial court entered a written order granting BNSF's summary-judgment motion "on the basis of" the 2017 Release. Having resolved all of Payne's claims against BNSF, the trial court later granted BNSF's unopposed severance motion. This appeal followed.

## II.   Legal Standards

This Court reviews an order granting summary judgment de novo. *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 536 (Tex. 2019). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to

6

the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We must consider whether reasonable and fair-minded jurors could differ in their conclusions considering all of the evidence presented. *See Wal–Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005). In a traditional summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. Traditional summary judgment is improper if there is more than a scintilla of probative evidence raising genuine issues of material fact. *Petit v. Maxwell*, 509 S.W.3d 542, 546–47 (Tex. App.—El Paso 2016, no pet.).

When a defendant moves for summary judgment on an affirmative defense, "he has the burden to conclusively prove all the essential elements of its defense as a matter of law, leaving no issues of material fact." *Garza v. Williams Bros. Const. Co., Inc.*, 879 S.W.2d 290, 294 (Tex. App.—Houston [14th Dist.] 1994, no writ). If the defendant meets his initial burden by "establish[ing] his right to an affirmative defense as a matter of law, the burden shifts to the plaintiff to produce controverting evidence that raises a fact issue on the defendant's affirmative defense." *Id.* at 294–95. Even

then, the burden remains on the defendant to negate the issues raised to conclusively establish its right to summary judgment. *Id.* at 295.

A contractual release is an affirmative defense. *See* Tex. R. Civ. P. 94. To establish its elements, "the party asserting the defense of release is required to prove the elements of a contract." *In re J.P.*, 296 S.W.3d 830, 835 (Tex. App.—Fort Worth 2009, no pet.). Because the FELA is a federal statute, "FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S. Ct. 1347, 1348 (1985); *BNSF Ry. Co. v. Phillips*, 485 S.W.3d 908, 910 (Tex. 2015).

BNSF, as summary judgment movant, initially bore the burden of showing there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a. The review begins with the release language. *Callen v. Pa. R.R. Co.*, 332 U.S. 625, 630, 68 S. Ct. 296, 298 (1948) (noting that releases of railroad employees stand on the same basis as the releases of others and are entitled to prima facie validity); *Mendoza-Gomez v. Union Pac. R.R. Co.*, No. 4:19-CV-4742, 2021 WL 3469998, at *4 (S.D. Tex. July 27, 2021) *aff'd*, No. 21-20397, 2022 WL 1117698 *3 (5th Cir. April 14, 2022). Where it is undisputed that an employee signs a release of the FELA claim, federal law shifts the burden to the nonmovant to establish the invalidity of the release. *Callen*, 332 U.S. at 630, 68 S. Ct. at 298 ("[O]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity . . . ."); *Fisher*, No. 02-21-00369-CV, slip

8

op. at 6; *Wicker*, 142 F.3d at 696; *see also Jarrett v. Consol. Rail Corp.*, 185 A.3d 374, 380 (Pa. Super. Ct. 2018); *Blackwell v. CSX Transp., Inc.*, 102 A.3d 864, 868 (Md. Ct. Spec. App. 2014); *Jaqua v. Canadian Nat. R.R., Inc.*, 734 N.W.2d 228, 232 (Mich. Ct. App. 2007).

## III.    Analysis

In *Fisher*, the same legal arguments were presented that are being advanced in this case and the facts, while not exactly identical, are very similar. We find our holdings in *Fisher* govern the disposition of this case.

In that case, we declined to adopt the *Babbitt* bright-line rule, which declares unenforceable any release of unknown future injuries or conditions made as part of a settlement of an existing FELA claim. *Fisher*, No. 02-21-00369-CV, slip op. at 8. Like that case, we also need not choose between the *Wicker* rule or the analysis in *Mendoza-Gomez*, because the result is the same using either analysis. *Id.* at 15.

As in *Fisher*, BNSF, as movant, was required to establish its right to summary judgment as a matter of law. *See id.* at 5. It attached Harrah's 2017 Release, which Payne did not contest. The release was therefore entitled to prima facia validity. As is readily apparent from the case history and the release provisions set out above, Harrah filed a lawsuit against BNSF alleging that he developed asbestosis from his occupational exposure to asbestos and that his settlement was made as part of that existing claim. Such being the case, the settlement was not barred by the FELA's Section 5. *Callen*, 332 U.S. at 631, 68 S. Ct. at 298–99. The 2017 Release clearly covered Harrah's claims for future injuries, whether known or unknown, arising out

9

of his exposure to asbestos, including cancer. The parties made it perfectly clear in the release language that it was their intent to cover risks of unknown future injuries arising from asbestos exposure. They even went so far as to outline such intent in a black box warning above Harrah's signature. BNSF therefore established that the release was intended to, and did, apply to future risk of cancer from exposure to asbestos. The burden then shifted to Payne to bring forward evidence to raise a fact issue on the invalidity of the release. *Fisher*, No. 02-21-00369-CV, slip op. at 18–19. Payne did not do so. Further, as we held in *Fisher*, Payne failed to raise a fact issue on intent. Her legal arguments were insufficient to raise a fact issue, and having advanced no evidence, there is no evidence upon which a fact issue could exist. *Id.* at 19; *see also Jarrett*, 185 A.3d at 379–80 (applying *Wicker*); *Mendoza-Gomez*, 2021 WL 3469998, at *4 (rejecting both *Wicker* and *Babbitt*). We overrule Payne's issue that the trial court erred in granting the summary judgment.

## IV.  Conclusion

Finding no reversible error in the record, we affirm the judgment of the trial court.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  July 14, 2022

10